THE STATE v. MORRIS MASON, Appellant.—14 S. W. (2d) 611.

Division Two, March 2, 1929.

*John D. Taylor* for appellant.

*Stratton Shartel,* Attorney-General, and *J. D. Purteet,* Special Assistant Attorney-General, for respondent.

DAVIS, C.—In an information filed in the Circuit Court of Chariton County by the prosecuting attorney, the defendant was charged with carnally knowing Fannie Hedrick, a female child under the age of sixteen years. The jury returned a verdict of guilty, and assessed his punishment at ten years in the penitentiary. The defendant appealed from the judgment entered on the verdict.

This is a companion case to that of State of Missouri v. William Conrad, *post*, page 246, currently decided. The evidence supporting the charge warrants the finding that, on September 15, 1926, between one-thirty and two o'clock in the afternoon, William Conrad and defendant visited the home of Orville Hedrick, which was situated about four and a half miles northeast of Keytesville, in Chariton County. They brought with them a half-gallon jug of moonshine whiskey, and during the succeeding two hours they drank all of it except about a half pint and except a sip or two Mrs. Hedrick took. Orville Hedrick, who was in the employ of defendant in the mining of coal, was absent from home at work. The men, however, found Mrs. Hedrick at home, together with four of her six children, the eldest of whom was Fannie, the prosecutrix herein, aged twelve years. The men remained in or near the home for about two hours, drinking whiskey and importuning Mrs. Hedrick and Fannie to partake thereof. Fannie refused to take a drink, and Mrs. Hedrick, after a sip or so, pretended to accede to Conrad's importunities. During his visit Conrad several times urged Mrs. Hedrick to permit Fannie to go to his orchard to gather apples, and defendant then suggested that her mother permit her to go, but Mrs. Hedrick declined to yield. Subsequently, about three-thirty P. M., Fannie's brother, James, nine years of age, returned home from school. Conrad asked James if he did not want some apples for his lunch bucket. The boy seemed anxious to have them, and Mrs. Hedrick assented that James and Fannie go to the orchard. The men then left the home by a path to the barn south of the house. Conrad said they were going to Stower's place (which lay to the south) to obtain more whiskey. The children immediately left the house by a path to the road which ran to the southwest. When they arrived at a bridge on the road, called the iron or red bridge, the men met them. The four persons continued walking down the road, Conrad and Fannie preceding defendant and James.

All of them climbed a fence, but Fannie did not see where or when defendant or James climbed it. Conrad took Fannie into an orchard and down into a ravine. She did not observe where defendant and her brother went, having lost sight of them shortly after they climbed the fence. After Conrad had taken her into the ravine, about a half mile from the road, he threw her down, pulled up her dress and took down her bloomers, and had sexual intercourse with her, against her consent. Fannie said she tried to get away, but that Conrad told her if she did not lay down, he would kill her. He later said that if she told anyone, he would kill her. Upon promising that she would not tell, Conrad let her go. Then the defendant caught her. The evidence in that regard reads:

"Q. What did Morris Mason do to you? A. He tried to do the same thing Bill Conrad did.

"Q. Just what did he do to you, Fannie? A. He throwed me down.

"Q. Did he throw you down more than once or just once? A. Just once.

"Q. Did he do anything to you? A. No, sir, he didn't; he tried it and couldn't.

"Q. Now, tell the jury just what he did when he was trying to. A. I was on the ground.

"Q. Where was he? A. On top of me.

"Q. Tell in your own way what he tried to do, if anything. A. Didn't try to do nothing, tried to do it and couldn't.

"Q. What did he do with his hands, Fannie? A. Just held me down.

"Q. Did he take your clothes off, any of them? A. No, sir.

"Q. Try to? A. No, sir.

"Q. What did he say to you, if anything, when he had you down? A. Never said nothing.

"Q. After Bill Conrad had made an attack on you, had you put your bloomers back on? A. Yes, sir.

"Q. He didn't pull your bloomers down? A. No, sir.

"Q. He just caught you and got on you? A. Yes, sir."

Fannie denied that two or three days after the occurrence she made a statement to defendant's counsel, in the presence of her parents and the sheriff, that defendant did not do anything except take hold of her arm. The sheriff testified for the defense that that was all she said. The State's evidence admitted the occasion of the questioning by defendant's counsel with the consent of her parents.

The testimony of James, Fannie's small brother, tends to show that, while lying under an apple tree together, without previous conversation, defendant told him he was going to knock him in

the head. James said that his daddy and mother told him to say this.

Herbert Horton, a lad of seventeen years of age, a witness for the State, stated that, while riding horseback along the road, he observed defendant lying under an apple tree in the orchard. Horton tied his horse and went to him. Upon speaking to each other, Horton asked defendant concerning Conrad's whereabouts. Defendant told him that Conrad and the little Hedrick girl were down in the brush, that they had better go to look for her, saying that, if they did not look for her, Conrad might hurt her. Defendant proceeded up one branch and Horton another, Horton losing sight of him. Horton found Conrad in his orchard close to the fence. He spoke to Conrad, and then they sat there talking. Presently, hearing Fannie crying, they started in that direction, Conrad in the rear of Horton. As they came in sight, he said he saw defendant raise up off the girl. Defendant then picked Fannie up in his arms and carried her across the branch, getting out of sight. Following, he found them lying on the ground, but he could not further describe their position. Fannie got up and ran toward the road. Defendant said that little girl acts like she was scared.

The evidence for the State further develops that Fannie returned home crying, making a complaint. Upon examination, blood was wiped away. She was immediately taken to Keytesville, where she was examined by a doctor, who stated in his opinion she had sustained sexual intercourse, for the parts were irritated and roughened.

The defendant's evidence tended to show that Conrad and defendant visited the Hedrick home that afternoon, and while there drank whiskey furnished by Conrad. The two men and the children left the house together, and walked down the road. He did not see Conrad and Fannie go into the orchard. He and the boy looked around for them, but did not find them. The boy said he would go home, and departed. He did not threaten the boy. About twenty minutes later, he saw Conrad and Fannie coming through the orchard and the girl was crying. Asking her what the matter was, she said Bill Conrad had done her dirt. While talking to her, defendant took hold of her arm. She then turned around and went towards home. Defendant denied that he took the girl in his arms, or carried her any distance, or was on top of her. Defendant denied that he knew that Conrad had assaulted the girl when they started to return to the Hedrick home, and denied knowledge of any assault. Going home, he was arrested the following evening.

The sheriff of Chariton County testified that, on the Saturday following the alleged assault, in answer to a question of defendant's counsel, in the presence of her father and mother, he heard Fannie say that defendant took her by the arm.

In rebuttal, Horton stated that no one was present but the little boy when he first saw defendant. A number of witnesses testified that defendant's reputation was bad, based mostly on his addiction to drink. Such other facts, if any, as become pertinent, will be stated in a discussion of the issues.

I. Defendant contends that he was deprived of his right to a preliminary examination, and charges that the motion to quash the information was improperly overruled. He states that he was induced, without comprehending the significance of it, to waive a preliminary hearing.

The facts in this regard tend to show that an information was first lodged against defendant shortly after the alleged crime. That cause, on change of venue, was sent to Saline County for trial and later dismissed. On September 20, 1927, an information was filed charging defendant with the same offense. The intention to dismiss the first information and file another in Chariton County had been conveyed to Mr. Taylor, defendant's attorney. On September 19, 1927, a complaint before the justice of the peace was filed, charging defendant with rape, and a warrant was issued in pursuance to the complaint, and defendant that same night was taken before the justice about seven-thirty P. M. The prosecuting attorney asked defendant if the next day would suit him for the preliminary hearing, or if he desired to waive it, and he replied that he was going to waive it. The prosecuting attorney stated that he did waive it. The evidence tends to show that with the implied consent of his counsel the defendant waived a preliminary examination as to the first information. However, the defendant's attorney was not advised of the second arrest at its occurrence, or given an opportunity to consult with his client. Defendant stated that he had read the depositions of the prosecutrix and Horton previous to his second arrest. Defendant said that he was told of the charge by the justice, who asked him if he wanted a preliminary examination, defendant replying that he did not know, that he had not talked to his attorney. The justice then asked him what he wanted to do about it, and he said, ''I suppose I'll waive it.''

While the examining authorities should be solicitous to see that a defendant has the benefit of counsel, as well as to accord him the opportunity of preserving his rights, nevertheless it lies within the power of defendant to say whether he demands or waives a preliminary examination. While the court could properly have remanded the cause to the justice to hold a preliminary examination, an issue of fact was raised by the evidence as to whether defendant voluntarily and understandingly waived the examination, and the

trial court has determined the fact adversely to defendant. A defendant may waive such examination, and we think the evidence shows that he expressly did so in this instance. [State v. Green, 229 Mo. 642, 129 S. W. 700.]

II. The motion for a new trial complains that an instruction on common assault should have been given the jury. An instruction of this nature involved the law of the case and should have been given, if the facts justified it. Where the motion for a new trial complains of the failure of the trial court to give to the jury an instruction involving the law of the case, as distinguished from an instruction on a collateral matter, the alleged error is preserved and we must consider it. [State v. Burrell, 298 Mo. 672, 252 S. W. 709.]

In addition to instructing the jury relative to consummated rape, the trial court also gave it an instruction involving an assault with intent to commit rape, in the event the jury found the charge of rape was not justified by the evidence. Section 3684, Revised Statutes 1919, recites, in effect, that one cannot be convicted of an assault with intent or of an attempt to commit a crime, where the evidence shows that the crime was perpetrated. Under the foregoing statute it has been held that, where the evidence shows the consummation of an offense, a conviction for an assault with intent or an attempt to commit a crime cannot stand. [State v. Bell, 194 Mo. 264, 91 S. W. 898.] Whether it applies to one who conspired but did not personally commit an offense, we need not decide. At common law, however, provided the minor offense is included in the major, one may be convicted of a minor offense, although charged with a major.

Notwithstanding the court instructed the jury on assault with intent to commit rape, the State's theory of prosecution, as well as its evidence, was directed to the establishment of a conspiracy, agreement and common design on the part of the men to carnally know the child and the actual consummation of it by Conrad. Evidence of acts on the part of defendant came in incidentally to show the conspiracy between the men and defendant's connection therewith. A common-assault instruction involved his personal acts, while he was prosecuted for constructive rape only, that is, the acts of Conrad. The real issue before the court did not involve a personal rape by defendant on the child, for all the evidence shows that he did not carnally know her, but it involved his acts in their relation to the rape actually perpetrated by Conrad on her. The trial theory demonstrates conclusively that he was tried for the personal act of rape by Conrad, pursuant to a conspiracy to that purpose. In that re-

gard, the evidence unequivocally shows a consummated rape on the child by Conrad and carnal knowledge of her, and we are unable to draw an inference from it limiting its effect to either an assault with intent to commit rape or common assault. We think the jury fully understood the situation, and understanding it, grounded its verdict as to defendant's guilt solely on the conspiracy and Conrad's actual rape on the child. In view of the trial theory, we do not think an instruction on common assault was justified, for the personal acts of defendant as to an assault were not included or brought within the scope of the charge as tried. If defendant had been charged and tried for the acts committed by him personally, even though he was charged with rape, an instruction on common assault would have been applicable, as is shown by State v. Hewitt, 259 S. W. 773, reviewing the authorities in this State. [State v. Frank, 103 Mo. 120, 15 S. W. 330.]

III. The motion for a new trial urges the assignment of error, reading: "Because the court erred in refusing to admit the testimony of T. P. Schooler as to the statement made by William Conrad at the time he was produced before Mr. Schooler, the committing magistrate, offered on behalf of defendant."

The defendant offered Schooler as a witness. He first stated that he was a justice of the peace of Salisbury Township, and September 16th, Bill Conrad was brought before him on the charge of raping Fannie Hedrick, and that he explained to Conrad the nature and character of the charge. The State then objected to defendant's question, "What did he say to you, if anything?" on the grounds that the purpose of the question could not be contradiction or impeachment, for Conrad had not testified, and that any statement made by Conrad was immaterial and self-serving. Defendant offered it on the ground that there was an understanding between Conrad and Herbert Horton, that Horton would swear to facts that would vindicate Conrad. The jury was excused, and, out of its hearing, defendant asked witness the question, "What did he say to you at the time with regard to having a witness that would clear him, if anything?" Whereupon defendant made an objection, which the court sustained, and defendant excepted thereto. Defendant then made an offer of proof, stating the witness would testify: "When the sheriff brought Conrad before me on the 16th, I informed him of what he was charged with and informed him that whatever he said would be taken as evidence against him, and that he was entitled to consult an attorney before doing his talking if he wanted to, and the only remark I remember of his, after I explained to him as to the charge that was up against him, was that they could

not hang anything on to him, that he had a witness that would clear him, and named one of the Hortons, but which one it was I don't remember." Defendant stated further that he offered the evidence in impeachment of Horton, who denied there was any such conversation between him and Conrad. The court also sustained an objection to the foregoing offer of proof, and defendant excepted.

(a) Primarily, a question is raised by the State as to the sufficiency of the assignment in the motion for a new trial. We think it satisfies the requirements of the statute. It definitely refers to a statement made by Conrad to the witness on a certain occasion, and directs the court to the proceedings and evidence on the trial where we may look to the objection made or the events or incidents relative thereto to determine the sufficiency thereof.

(b) However, when we come to consider the proceedings on the trial, we think the assignment is without merit. The offer of proof tended to show nothing more than an assertion by Conrad that the evidence would not warrant his conviction, and that he knew a witness, Horton by name, whose testimony would vindicate him. The statement may have been true, yet we cannot see how such testimony could affect the rights of defendant, except as it would tend to show that Conrad did not commit the crime, but the record shows that it was not offered for that purpose, even if we could say that it was admissible on that theory. For the purpose offered, such testimony was immaterial from any viewpoint. Even though it tended to impeach Horton, it would have tended to impeach him as to an immaterial matter. In any event, we do not think the ruling of the court was prejudicial.

IV. The defendant complains of the rebuttal testimony of witness Horton in his motion for a new trial, because it was not properly rebuttal and because it was merely cumulative of his evidence in chief and because it tended to accentuate and emphasize his former testimony. In his brief defendant contends that it was admitted in abuse of the court's discretionary powers. This latter contention is not before us, for defendant did not complain on that ground in his motion. [State v. Miller, 300 S. W. 765.] The evidence admitted in rebuttal tended to establish that James was present when the witness first approached defendant, that defendant was sitting down and that witness did not find defendant home that night when he called, but he looked for him no further. The scope of testimony in rebuttal is largely within the discretion of the trial court, even though it is cumulative of evidence previously given by the witness. [State v. Murphy, 292 Mo.

275, 237 S. W. 529.] The rebuttal testimony in this instance did not constitute error.

V. Defendant challenges the action of the court in refusing his Instruction A to the effect that, under the evidence in this case, the defendant cannot be found guilty of the charge of rape. In this connection it is also said that the court erred in submitting to the jury the question of conspiracy, because the elements of conspiracy are wholly absent, and the record is devoid of evidence tending to prove a conspiracy.

The evidence for the State establishes that defendant did not personally have sexual intercourse with the child. The propriety of his conviction depends upon the act of carnal knowledge by Conrad with the child, and a conspiracy by defendant with him for the accomplishment of the act. The evidence strongly supports the finding that Conrad carnally knew Fannie, and we need not elaborate the evidence in that regard.

The record does not develop express evidence of an agreement on the part of Conrad and defendant to ravish the child. Such evidence as tends to show a criminal purpose on the part of defendant must be deduced as a matter of inference from defendant's conduct and acts in their relation to Conrad's conduct and acts. The evidence develops that the men left the house, going a different path and in a different direction from the path and direction taken by the children. They subsequently met the children at the iron or red bridge, and almost immediately separated, defendant leading the boy to one place while Conrad conducted the girl to another. Upon the arrival of Horton, Horton inquired of defendant concerning the whereabouts of Conrad. Defendant replied that Conrad and the little Hedrick girl were down in the brush, and if they did not look for her, Conrad might hurt her. Separating to find them, Horton came upon Conrad, and while conversing with him, he heard Fannie crying, upon which he started in that direction and saw defendant rise up off of Fannie. Fannie stated that defendant threw her down, and while she was on the ground, he was on top of her. This was evidence from which an agreement on the part of the men to do a criminal act may be inferred. In view of the surrounding facts and circumstances, and especially defendant's act in prostrating himself on Fannie later, we are not justified in limiting the effect of defendant's leading the boy to a different spot from that to which Conrad conducted Fannie to a mere coincidence. While the facts in this case are not as conclusive of guilt as the facts recited in State v. Sykes, 191 Mo. 62, 89 S. W. 851, nevertheless the facts develop sufficient probative force to justify the inference that,

prior to the consummation thereof, a conspiracy, agreement and common design between defendant and Conrad to ravish the child obtained.

VI. Finally defendant avers that Instruction Two is erroneous. The purport of the instruction runs that, if Conrad unlawfully, wilfully and feloniously carnally knew Fannie, and if Conrad and defendant entered into a conspiracy to assault Fannie, and that pursuant to such conspiracy Conrad assaulted and carnally knew her, then the jury may find defendant guilty.

(a) The serious objection made to the instruction in the motion for a new trial is that it fails to tell the jury that it was necessary for the defendant to have taken any part in the carrying out of the alleged conspiracy, agreement or common design. The statute, Section 3687, Revised Statutes 1919, bearing on the subject, reads: ''Every person who shall be a principal in the second degree in the commission of any felony, or who shall be an accessory to any murder or other felony before the fact, shall, upon conviction, be adjudged guilty of the offense in the same degree, and may be charged, tried, convicted and punished in the same manner, as the principal in the first degree.''

Relative to principals in the second degree, 16 Corpus Juris, 125 126, says: ''A principal in the second degree, or an aider and abettor as he is frequently called, is one who is present actually or constructively, aiding and abetting in the commission of the felony; one who so far participates in the commission of a crime as to be present for the purpose of assisting therein, if necessary; one who gives aid and comfort, or who either commands, advises, instigates, or encourages another to commit a crime; one who does some act to help or to render aid in the actual perpetration of a crime; a person who, by being present, by words or conduct, assists or incites another to commit the criminal act.''

16 Corpus Juris, 134, has this to say relative to an accessory before the fact: ''There are several things that must concur in order to justify the conviction of one as an accessory before the fact: (1) That he advised and agreed, or urged the parties or in some way aided them, to commit the offense; (2) that he was not present (actually or constructively) when the offense was commited; (3) that the principal committed the crime.''

While there is a distinction between a principal in the second degree and an accessory before the fact, which may be of importance under certain facts (State v. Porter, 199 S. W. 158), yet the evidence in this case for the State develops the guilt of defendant, both

as a co-conspirator (tantamount here to an accessory before the fact), and as a principal in the second degree, or, as known at the common law, as an accessory at the fact. If defendant advised and agreed with Conrad to commit the offense and Conrad pursuant thereto committed it, defendant, having made the agreement and thus becoming a conspirator or an accessory before the fact, is guilty as a first-degree principal when Conrad committed the crime, without further participation therein. We think the facts also tend to show that defendant was constructively present during Conrad's act and therefore was also a principal in the second degree, but, pursuant to the agreement or common design, defendant was guilty, irrespective of his presence, when the crime was committed. The State may well have proceeded on the theory that defendant was a second degree principal, but having submitted the theory of conspiracy, which the facts justified, the instruction was not erroneous, because it did not require a finding of actual participation in the crime by defendant by aiding and abetting. It may be that some cases hold that one cannot under the evidence at the trial be held to be either or both a principal in the second degree and an accessory before the fact (16 C. J. 134), but we see no inconsistency therein, where the facts justify the dual capacity, especially since the statute renders either one a first degree principal.

(b) The motion for a new trial also condemns the instruction on the ground that it does not properly state the law. This objection is too general, because it fails to comply with the mandate of Section 4079, page 198, Laws 1925, in that it does not specifically set forth reasons or tell why it fails to properly state the law. [State v. Standifer, 289 S. W. 856.]

(c) It is further said that the instruction is erroneous, because it does not make any allowance or provision for the fact that, although a conspiracy might have been entered into, the defendant withdrew from such conspiracy before William Conrad, his co-conspirator, entered into the carrying out and carried out the alleged common design. This objection is not tenable, for the evidence does not purport to show that defendant withdrew from the conspiracy and communicated his withdrawal to Conrad before Conrad committed the crime. The evidence in his behalf tends to show that he did not enter a conspiracy of any kind.

(d) It is finally said that Instruction Two is error because it is in conflict with Instruction Nine, given on behalf of the State, and also because it is in conflict with instructions Eleven and Twelve, given on behalf of defendant. In order to permit us to consider assignments of this nature, the assignment should set forth wherein

a conflict exists. Consequently, the assignment is not sufficient to comply with the mandate of Section 4079, page 198, Laws 1925.

It follows that the judgment should be and is affirmed. *Higbee* and *Henwood, CC.,* concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. *White,* and *Walker, JJ.,* concur; *Blair, P. J.,* concurs in result.