THE STATE v. ANGELO ROSEGRANT, Appellant.—93 S. W. (2d) 961.

Division Two, April 23, 1936.

1154

*Thos. J. Rowe, Jr.,* and *Henry Rowe* for appellant.

1156

*Roy McKittrick,* Attorney General, and *Frank W. Hayes,* Assistant Attorney General, for respondent.

1158

BOHLING, C.—Angelo Rosegrant appeals from a judgment imposing a sentence of twenty years' imprisonment for the kidnaping of Isaac D. Kelley.

Isaac D. Kelley, a doctor of medicine specializing in diseases of the ear, nose and throat, resided in St. Louis, Missouri. On the night of April 20, 1931, he, in response to two telephone calls from one Felix McDonald (identifying himself as "Mr. Holmes"), left his home and did not return until April 28, 1931. Mr. McDonald, in the telephone conversations, informed Dr. Kelley that McDonald's nephew had recently arrived from Chicago where he had undergone a mastoid operation by a Dr. Ballinger; that the nephew was suffering severe pain in his ear and, upon the recommendation of Dr. Ballinger, they desired Dr. Kelley to treat the nephew; that McDonald would come for Dr. Kelley; and, upon Dr. Kelley stating he preferred to drive his own car, McDonald directed Dr. Kelley to come to what he designated the "Davis" place. Dr. Kelley, following the directions given over the telephone, drove into St. Louis County and turned into a driveway where, his progress being blocked by a parked automobile, he stopped his car. A man, later identified as McDonald, came to Dr. Kelley's car, got in and, poking Dr. Kelley in the ribs with something, directed the Doctor in the operation of his automobile. After traveling some distance Dr. Kelley was taken from his car and blindfolded, and placed in another car. Re-

suming travel, they arrived at a house, where Dr. Kelley was taken upstairs, searched and his valuables, with the exceptions of a scarf pin, taken from him. He was made and held a prisoner and confined in different places until his release. During his detention, the abductors compelled him to wear goggles with adhesive tape over the lenses. He made a small hole with the scarf pin in the tape over each lens of the goggles that he might have some vision. At times, when his captors were not in the room in which he was confined, he was permitted to remove the goggles. Dr. Kelley testified that while he was lying on a bed with the goggles slightly raised he saw appellant pass the door, which was partly open, of his room. At one time a machine gun was exhibited to him through a partially open door and he was told if he said anything about the kidnaping they would use the gun to ''smear up'' his door step with him. Other threats of personal violence to him were made. At the dictation of his captors, he addressed two ransom notes to Mrs. Kelley, which she received. Finally, Dr. Kelley was told he would be released to John Rogers, a reporter for the St. Louis Post Dispatch, and, taken from his place of confinement, he was released on a country road. In a few minutes Mr. Rogers drove up and Dr. Kelley, entering the automobile, was driven to the home of Mr. Rogers, where he gave a narrative of his experiences. From there Dr. Kelley went to his home.

Adolph Fiedler, a witness for the State, testified that he operated a recreation center on the second floor of a building at Olive Street and North and South Road in St. Louis County, Missouri; that sometime in February, 1931, Thomas Hayes, Harry Lecher, Willie Gee, Felix McDonald, Bart Davitt, Mrs. Nellie Muench, appellant and himself had two conferences, about a week or ten days apart, at his recreation center; that appellant took an active part in the discussions; that it was determined to kidnap Dr. Kelley and hold him for ransom; that on the evening of April 20, 1931, McDonald telephoned Dr. Kelley twice from witness' place (the witness' narration of the telephone conversation being in accord with that given by Dr. Kelley of the two telephone calls); that McDonald was accompanied at the time by Davitt; that, after the telephoning, McDonald and Davitt put on their raincoats and caps—the night was extraordinarily stormy—inspected their pistols, blindfolds and goggles, and went down the steps; that appellant was down stairs; and that he heard a couple of cars depart. He further testified that later that evening appellant came back with Lecher and Gee and asked witness if he had the keys for any cars; that witness replied no; that they went back downstairs, got in the cars and drove away; that a couple of days later he told appellant Hayes wanted to see him ''right away;'' and that later appellant told him he had been

to East St. Louis, got a ransom note and put it in the box at York Village. He also testified that appellant told him if anything serious came up the boys would be at the farm and for witness to get in touch with them. There was other evidence connecting appellant with the offense.

The evidence adduced on behalf of appellant was directed to an attack on the credibility of the witness Fiedler, on impeachment of the identification of appellant by Dr. Kelley, and the establishment of an alibi to the effect that appellant was confined to his home for several days prior and subsequent to the time of the offense, suffering from gouty arthritis affecting the right foot, a swollen knee and ankle.

The State, in rebuttal, produced evidence to the effect that appellant on April 22 or 23, the day is not definitely fixed in the testimony, was up and about his home and was not suffering any impediment in his locomotion.

Under the facts as above indicated, appellant being identified by Dr. Kelley and his connection with the offense being testified to by the witness Fiedler, the case was one for the jury, and it is unnecessary to here set forth further details of the testimony.

I. This cause was assigned first to Division No. Three of the Circuit Court of St. Louis County. Judge Mueller of that division disqualified himself and transferred the cause to Division No. Four, Judge McElhinney consenting thereto. Appellant filed an application to disqualify Judge McElhinney which was modified by the court to read "Application of Defendants for Change of Venue" and the cause was transferred to Division No. One, Judge Nolte presiding, of the circuit court of said county. Appellant's brief assigns errors in that the application being under Section 3648, Revised Statutes 1929 (Mo. Stat. Ann., p. 3202), Judge McElhinney was required to proceed under the provisions of Sections 3649, 3651, Revised Statutes 1929 (Mo. Stat. Ann., pp. 3204, 3206), and not Section 14626, Revised Statutes 1929 (Mo. Stat. Ann., p. 2639). We find no mention of this issue, as well as many others, in the State's brief. We think the issue must be ruled against appellant for several reasons.

a. The Circuit Court of St. Louis County, Division No. Four, at the time of the filing of the application to disqualify Judge McElhinney and up to and including the entry of the order transferring the cause to Division No. One of said court, had jurisdiction of the offense and the person of the appellant. The order transferring the cause was not an absolute nullity and, if erroneous, was proper subject matter for exception in said Division No. Four. [State v. Lynn, 169 Mo. 644, 671, 70 S. W. 127, 129; State ex rel. v. Harris, 312 Mo. 209, 211, 278 S. W. 668, 669(1); Thompson v. Sanders, 334 Mo.

1100, 1105(4), 70 S. W. (2d) 1051, 1054(5).] Being a matter of exception, the application to disqualify Judge McElhinney and the proceedings had thereon, including any exceptions taken—the same as in cases involving an application for a change of venue [State v. Baird, 297 Mo. 219, 227(3), 248 S. W. 596, 599(4), and cases referred to; State v. Gilreath (Mo.), 267 S. W. 880, 881(1)] or a motion for new trial [State v. Turpin, 332 Mo. 1012, 1016(1), 61 S. W. (2d) 945, 947(1); State v. Tribbey (Mo.), 50 S. W. (2d) 1017, 1018(2), and cases cited] or other proceedings not part of the record proper—should have been incorporated in the bill of exceptions to preserve the alleged error for appellate review. Although set forth in the record proper, we fail to find appellant's application to disqualify Judge McElhinney or any exception to the action thereon in the bill of exceptions. The incorporation of the application in the record proper [State v. Turpin, supra; State v. Forshee, 308 Mo. 651, 661, 662, 274 S. W. 419, 422 (2, 6)] or the notation therein of the saving of exceptions [State v. Rigall, 169 Mo. 659, 661, 70 S. W. 150] is not sufficient to preserve the issue for review here. State v. Glasscock, 232 Mo. 278, 291, 134 S. W. 549, 553(2), states: "The plea in abatement and the motion to quash are found in the record proper, but are not included in the bill of exceptions. The evidence in support of each and the rulings of the court thereon are preserved in the bill of exceptions, but that is not enough, for the plea and motion have no place in the record proper, and it is as essential that they be incorporated in the bill of exceptions as in case of motions for a new trial and in arrest of judgment." That case held the alleged errors even if well founded were not before this court for review; and so in the instant case.

b. Section 29 of Article 6 of the State Constitution, after making provisions for the holding of a term or part of a term of court of a given circuit court by the judge of another circuit, provides that "in all *such* cases, or in *any* case where the judge cannot preside, the General Assembly shall make such additional provision for holding court as may be found necessary." (Italics ours.) Sections 3648-3651, Revised Statutes 1929 (Mo. Stat. Ann., pp. 3202-3206), are found in the general code of criminal procedure, whereas Section 14626, Revised Statutes 1929 (Mo. Stat. Ann., p. 2639), is found among the provisions relating to the Thirteenth Judicial Circuit—the Circuit Court of St. Louis County [Secs. 14611-14630, R. S. 1929, Mo. Stat. Ann., pp. 2634-2640, Laws 1909, pp. 408-410; Laws 1929, pp. 157-161]. Section 3648, supra, specifies certain circumstances under which a trial judge is deemed incompetent to preside in a criminal case. Summarized, for an understanding of the instant issue: Section 3649 designates an application to disqualify a trial judge under Section 3648 an "application for a change of

venue," and permits the defendant and prosecuting attorney by agreement in writing, with the concurrence and approval of the court, to elect some eligible *attorney at law* special judge. Section 3651 provides, should a special judge be not agreed upon or fail to proceed, for the judge of the court "requesting another circuit or criminal judge to try the case," and in the event of the failure of such judge to try the case, ordering "a change of venue" to some other circuit. Among the purposes of said statutory provisions are the reasonable preservation to an accused of the right to trial by a jury of the county and the substitution of another judge for the disqualified regular trial judge, and providing, at the same time, a procedure to the end that the case eventually be determined in a court of competent jurisdiction. While the application is technically one for the substitution of a trial judge [State ex rel. v. Slate, 278 Mo. 570, 577, 214 S. W. 85, 87(1)], the statutory designation of the application as one for a change of venue is a legislative assignment of such applications to the class of applications designated applications for a change of venue. The circuit court of the Thirteenth Judicial Circuit is composed of four divisions [see Secs. 14611, 14620, supra]. Section 14626, supra, relating to said judicial circuit provides: "No change of venue shall be allowed by said circuit court to the circuit court of any other county in this state for the cause that the judge sitting for the trial of said suit is prejudiced, nor for the cause that the opposite party has an undue influence over the mind of said judge, but if any application is made alleging that either or both of said causes exist as against the judge before whom said suit is pending for trial, then said suit shall be at once transferred to a division held by one of the other judges of said circuit court." Section 14627, supra, provides for the convening, etc., of grand juries in said county and Section 14628, supra, provides for the filing and assignment of indictments and informations in the same manner as civil cases, unless otherwise required by the rules of said court. From the foregoing statutory provisions, the legislative intent to make the provisions of Sections 14611-14630, supra, applicable to criminal as well as civil proceedings is apparent. Said Section 14626 [Laws 1929, p. 159, sec. 7] is in effect a reenactment of Section 14616, supra [Laws 1909, p. 409, sec. 6], changing said Section 14616 in so far as here material only so as to embrace the four instead of the former two divisions of said circuit court. Neither of said sections is limited to any particular class of cases. In 1909 [Laws 1909, pp. 413-415] provision was also made for two divisions of the circuit court of the Twenty-third Judicial Circuit; and Section 7 of said act, relating to changes of venue, specifically mentions its applicability to "civil cases." The failure of the Legislature to so restrict Section 14616 substantiates the con-

clusion that criminal and civil cases are within its provisions, and the provisions of Section 14626. Where a circuit court is comprised of several divisions and the judge of the division in which the cause is pending is disqualified, a transfer of the cause to another division presided over by another judge affords the accused (so far as here involved) a trial before a jury of the county and a regular qualified judge; and the primary objects of the provisions relating to the disqualification of trial judges is accomplished with facility and dispatch in circuits composed of more than one division of the court. Section 14626 applying particularly to the Thirteenth Judicial Circuit, composed of four divisions of court, modifies the general and comprehensive provisions of Sections 3648-3651 of the code of criminal procedure in so far as the subject matter of said Sections 3648-3651 is supplanted by the provisions of said Section 14626 [See, by way of analogy, Laughlin v. Newman (Mo. App.), 61 S. W. (2d) 218, 219(4); State ex rel. v. Brown, 334 Mo. 781, 787, 68 S. W. (2d) 55, 58(4-8); State ex rel. v. Hostetter, 336 Mo. 391, 79 S. W. (2d) 463, 470(19).] Indulging, as we should indulge on the instant issue in the absence of a showing to the contrary, in the presumption of right action on the part of the trial court, it is to be presumed that appellant's application was within the provisions of said Section 14626 and that the cause was lawfully transferred to Division No. One of said court.

[Adverting to appellant's application as set forth in the record proper, we find the ground for the incompetency of Judge McElhinney is his alleged prejudice against appellant, expressly bringing said application within the provisions of said Section 14626. The prayer of said application is for an order disqualifying Judge McElhinney and a "further order that the case be tried by some judge who does not have such prejudice. . . ." The transfer of the cause to Division No. One, Judge Nolte presiding, we think, was in substantial accord with the prayer of said application.]

█ c. The several assignments in appellant's motion for new trial resting in their final determination upon the propriety of the transfer of the cause from Division No. Four to Division No. One of the Circuit Court of St. Louis County assign no specific ground or cause for the alleged error unless the statement that the action of the court was "over the objection and exception of defendant" be held sufficient to preserve the issue for appellate review. Illustrative thereof is: "The court erred in denying the application of defendant to disqualify him and in changing the venue over the objection and exception of defendant." Such assignments fail to meet the requirements of Section 3735, Revised Statutes 1929 (Mo. Stat. Ann., p. 3275, as amended in 1925, Laws 1925, p. 198), providing that motions for new trial "must set forth in detail and with particularity in separate numbered paragraphs the specific grounds or

causes therefor." This defect is common to so many of the assignments of error in appellant's motion for new trial that a review of some of the cases may be had with propriety. State v. Vigus (Mo.), 66 S. W. (2d) 854, 856(6), holds an assignment that "the court erred in giving State's Instruction No. 1 over the objections and exceptions of defendant" insufficient, because the assignment failed to state the reasons for the alleged error. [State v. Bowers (Mo.), 24 S. W. (2d) 58, 60(6); State v. London (Mo.), 84 S. W. (2d) 915, 916(2).] State v. Bagby, 338 Mo. 951, 93 S. W. (2d) 241, holds an assignment with reference to the admission of evidence (Paragraph II) and another with reference to a failure to instruct (Paragraph VII) "over the objections and exceptions of defendant" too general to preserve the issue for appellate review. State v. Lock (Mo.), 300 S. W. 698, 699(6), assigns as one of the reasons for holding an attack against an instruction insufficient: "It does not point out in detail and with particularity the specific grounds or causes for the objection." Speaking to an attack against the admission of evidence over objection and exception saved, State v. Lonon, 331 Mo. 591, 599, 56 S. W. (2d) 378, 381(8), in passing upon an assignment embracing extracts from the testimony of several witnesses, states: "No specific ground is set forth in the motion for a new trial wherein the court erred in admitting the evidence of any particular witness. Failing in this the assignment is insufficient." State v. Ryan (Mo.), 50 S. W. (2d) 999, 1000(8), states: "It is sufficient if the assignment contains the name of the witness, the substance of the testimony complained of, and the grounds of its admissibility or inadmissibility." [See State v. Majors, 329 Mo. 148, 156, 44 S. W. (2d) 163, 166(5).] State v. Shawley, 334 Mo. 352, 375(11), 67 S. W. (2d) 74, 86(23), in holding an assignment attacking certain instructions by number insufficient, states: "No reasons are given." Among other cases to the effect the motion for new trial should set forth the reasons for the alleged error are: State v. Bailey, 320 Mo. 271, 278, 8 S. W. (2d) 57, 59(6); State v. Fisher (Mo.), 46 S. W. (2d) 555, 556(2); State v. Shuls, 329 Mo. 245, 253, 44 S. W. (2d) 94, 97(11); State v. Buckner (Mo.), 80 S. W. (2d) 167, 169(11). The foregoing authorities indicate the terms "grounds" and "causes," as used in said Section 3735, are synonymous with the term "reasons." It is common practice to use the terms interchangeably in the various motions employed in trial practice. Appellant's motion asks a new trial "for the following *reasons*:" It is elementary that without proper objection (or in some instances proper motion), with exception saved to the court's action, alleged error is not for review. The phrase "over the objection and exceptions of defendant" in a motion for new trial informs the court that the alleged error, to the extent embraced within the objection interposed or exception taken, has been pre-

served for review, but the grounds, or causes, or reasons for the alleged error remain undisclosed. Should we hold an assignment such as here under review sufficient, we would be required, if several reasons be set forth in the record for the alleged error, to consider each and all of said issues, and to speculate whether or not the pleader had in mind the specific ground or reason under discussion at the time of drafting the motion for new trial and the old "shot gun" assignment, in many instances, would be revived by the mere addition of the phrase "over the objection and exception of defendant." Among the purposes sought to be accomplished by the enactment of said amendment of 1925 to now Section 3735 was the elimination of vague generalities in motions for new trial and the presentation of the precise issue relied upon to the trial court and, upon appeal, to the appellate court to the end primarily that *the error*, if any, *be* presented and *corrected in the trial court* and not held undisclosed until presented in the appellate court, if, perchance, it then be disclosed and presented in appellant's brief. Thus a potent objection to the administration of justice—the law's delay —as well as the elimination of unnecessary labor, expense and loss of time was sought to be accomplished; and the salutary purposes of said Section 3735 should not be circumvented by the stock phrase "over the objection and exception of defendant."

■ II. The indictment is under Section 4020, Revised Statutes 1929 (Mo. Stat. Ann., p. 2827), reading: "If any person or persons shall willfully, without lawful authority, seize, confine, inveigle, decoy, kidnap or abduct or take or carry away by any means whatever, or attempt so to do, any child of any age, or any person or persons and attempt or cause such child or person or persons to be secretly confined against their will, *or* abducted for the purpose and with the intention of causing the father or mother or any other relative of the person so abducted, or anyone else, to pay or offer to pay any sum as ransom or reward for the return or release of any such child or person or persons, said person or persons so guilty of the above mentioned *acts or act*, shall, on conviction, be punished. . . ." (Italics ours.) Reference to many criminal statutes of this State discloses that the doing of a particular thing therein specified, "or" another thing, "or" another is made punishable; and under the decisions of this State one who does any one, or any two or more, or all of the prohibited acts commits an offense. This appeal involves only the acts hereinafter mentioned. "If any person . . . shall willfully . . . kidnap *or* abduct . . . any . . . person and . . . cause . . . such . . . person . . . to be secretly confined against their will" constitutes one of the several "acts" prohibited by the statute. The act itself is prohibited. Its accomplishment constitutes the offense and the criminal intent

essential to the commission of a crime is included in the doing of the act. The essence of the offense is the kidnaping and secretly confining a person against his will, and it is not essential to the charge to allege any specific intent—whether the intent be the extortion of money by means of a ransom or reward, the commission of murder, mayhem, robbery or other purpose. When the act prohibited by the statute is the abduction of a person for the purpose and with the intention of causing some person to pay or offer to pay a sum as ransom or reward for the return or release of the person abducted, the purpose and intent with which the abduction is committed enters; and the offense is committed by the doing of some overt act toward the execution of said purpose and intention although the abduction be not fully consummated or the offender subsequently change his purpose and intent from that of extortion. [See State v. Higgs, 325 Mo. 704, 706, 29 S. W. (2d) 74, 75(1), discussing "kidnaping" under Section 4021, Revised Statutes 1929 (Mo. Stat. Ann., p. 2828); State v. McGee, 336 Mo. 1082, 1101(11), 83 S. W. (2d) 98, 109(42).] The kidnaping or abduction and confinement against will *or* abduction for ransom or reward are separate acts and the commission of either or all of said acts as part of one transaction constitute but *one* offense. [See State v. Fancher, 71 Mo. 460, 462.] The statute imposes but one punishment. There is nothing in the statute warranting the infliction of separate and distinct penalties for each of the several prohibited acts should the offender commit more than one as part of the same transaction.

The indictment so far as material to the issues here presented charges that "Angelo Rosegrant, . . . on the . . . at . . . did then and there unlawfully, feloniously, willfully and without lawful authority seize, confine, inveigle, decoy, kidnap, take and carry away one Isaac Dee Kelley, and did then and there willfully and unlawfully cause the said Isaac Dee Kelley to be secretly confined against his will and to be kidnaped and abducted against his will for the felonious purpose and with the felonious intention then and there of causing the wife, Kathleen McBride Kelley, . . . to pay and offer to pay a sum of money as ransom or reward for the return and release of the said Isaac Dee Kelley, so seized, . . . as aforesaid. . . ." While the indictment might be well improved as to substance, we think it not subject to the attacks made against it. The words "kidnaped and" between the words "and to be" and "abducted against his will" form no part of the gravamen of the prohibited act of abduction for ransom or reward, are surplusage and disregarded.

Appellant filed a demurrer attacking the indictment as a whole. Appellant's brief presents the contention that Section 4020, supra, defines two separate and distinct offenses—that is, two different ways

or means of extortion through the instrumentality of abduction (designated kidnaping by appellant): (1) abduction for ransom; and (2) abduction for reward; that the offense of abduction for the purpose and intention of causing another to pay a ransom and the offense of abduction for the purpose and intention of causing another to offer to pay a reward are inconsistent, contradictory and repugnant; and that the indictment in charging the defendant with the abduction of Isaac D. Kelley "for the purpose and with the . . . intention of causing his wife . . . to pay and offer to pay a sum of money as ransom or· reward for the return and release" of said Isaac D. Kelley charged neither of the offenses defined by the statute. Appellant argues that each of the words "ransom" and "reward" as used in the statute is governed by its own infinitive; that is, "to pay" governs "ransom" and "offer to pay" governs "reward;" that "for the return" complements "ransom" and "[for the] release" complements reward," and that the indictment by changing the statutory "or" between "to pay or offer to pay" to "and," and the "or" between "return or release" to "and," but not the "or" between "ransom or reward," makes synonyms of the antithetical words of the statute and does not charge either offense described by the statute. We are inclined to the opinion this latter criticism is hypercritical; but deem it unnecessary to rule the precise issue in the instant case for the reasons indicated in subdivision (b), infra.

a. Appellants contention that abduction for ransom and abduction for reward are repugnant offenses is not well taken. An abductor may contemplate arrangements whereby demands of payment for the release of the victim will be made and at the same time contemplate a reward may be offered for the release of the victim and, if so, its acceptance. These purposes and intentions may exist while the victim is also being secretly confined against his will. Take for instance, the affirmative facts as disclosed by the State's case here: Isaac D. Kelley was kidnaped and abducted, he was searched and his personal property was taken from his person, he was secretly confined against his will, and a ransom was demanded for his return or release.

b. While appellant's demurrer attacks the sufficiency of the allegations of the indictment to charge an offense, the attack in appellant's brief is limited to the acts prohibited by the second subdivision of the statute—an abduction for ransom or reward—and do not embrace the acts set out in the indictment and found in the first subdivision of the statute—a kidnaping and secret confinement of the victim against his will. All that portion of the indictment referring to the acts of abduction for ransom or reward might be treated as surplusage and rejected [see Sec. 3563, R. S. 1929, Mo.

1168

Stat. Ann., p. 3160], and there would remain within the indictment allegations charging all the constitutive elements of an offense under said Section 4020—to-wit: kidnaping and secret confinement of the victim against his will—sufficient in both form and substance. All the material averments of the indictment are presumed to be true upon attack. [State v. Hedrick (Mo.), 296 S. W. 152, 153(5).] This court has held that where one of several counts of an indictment is good an attack against the indictment as a whole will not be sustained. [State v. Rector, 11 Mo. 28; State v. Wishon, 15 Mo. 503, holding the attack should be made against the defective count.] It is to be noted that the indictment uses the conjunction "and" between the allegations therein relating to the statutory prohibited act of kidnaping, accompanied by a secret confinement against will, and the prohibited act of abduction for ransom or reward. The defect, if any, existed in the charging of abduction for ransom or reward and not in charging two of the prohibited acts in the alternative. As in the case of defective counts of an indictment, when an indictment charges conjunctively two or more nonrepugnant acts in the same count and the charge as to one of said acts is sufficient, an attack against the indictment as a whole should not be sustained, and any such defect should be reached by an attack against that portion of the indictment defectively setting forth one of the several prohibited acts. [See 31 C. J. 821, sec. 406, n. 62; and although not on the precise issue, State v. Lawler, 220 Mo. 26, 32(2), 119 S. W. 639, 641(2); State v. Hoyt, 324 Mo. 837, 844, 24 S. W. (2d) 981, 984, wherein a motion to strike portions of an indictment was sustained and approved.]

▮ III. The verdict reads: "We, the jury find the defendant, Angelo Rosegrant, guilty of kidnaping, as charged in the indictment, and assess his punishment in the State penitentiary for a term of 20 years." Appellant contends, if, as we have held, the prohibited acts be not repugnant, that since the indictment charged a purpose and intention of causing Mrs. Kelley (1) to pay a (a) ransom or (b) reward or (2) to offer to pay a (a) ransom or (b) reward, and the main instruction for the State authorized a conviction if the jury found, among other findings, that defendant caused Isaac Dee Kelley to be "abducted for the felonious purpose. and the felonious intent . . . of causing the wife of said Isaac Dee Kelley, to-wit, Kathleen McBride Kelley . . . *to pay or offer to pay* any sum of money as *ransom or reward* for the *return and release* of the said Isaac Dee Kelley . . ." the verdict, (1) if regarded as a general verdict in not designating the offense for which defendant was convicted, is not responsive to the charge and cannot stand; or, (2) if regarded as a special verdict, fails to find all

the elements of the offense charged in the indictment, to-wit: the evil purpose and intention of an abduction for ransom or reward.

a. Illustrative of the cases cited by appellant in support of the first contention, wherein a general verdict of guilty was held to lack that precision and certainty essential to its validity, are cases wherein general verdicts were held defective under instructions submitting in the alternative each of several separate crimes, as burglary and larceny [State v. McHenry (Mo.), 207 S. W. 808(1), citing all cases cited by appellant not hereinafter specifically referred to] or each of several nonrepugnant acts prohibited by a given statute [State v. Washington, 242 Mo. 401, 409, 146 S. W. 1164, 1166; State v. Brotzer, 245 Mo. 499, 516(4), 150 S. W. 1078, 1082(5); State v. Frazier (Mo. App.), 40 S. W. (2d) 761] when charged in one count; or each of several separate crimes when forming part of one transaction [State v. Pace, 269 Mo. 681, 685(1), 192 S. W. 428, 429(1, 2)] or separate and distinct transactions [State v. Schwarting (Mo. App.), 288 S. W. 969, 970(2)] when charged in separate counts. Under such circumstances the court is unable to determine whether all of the jurors agreed in their finding as to the particular crime or prohibited act defendant was guilty of as some of the jurors may have believed defendant guilty under one count of the indictment or information or of one of the several nonrepugnant acts prohibited by a given statute and charged in one count whereas other jurors may have believed defendant guilty under another count or of another of the nonrepugnant prohibited acts. The rulings of these cases appear to be settled law, and good discussions of the issue on the verdict may be found in the Pace and Frazier cases, supra.

b. Appellant in support of his second contention, cites a number of cases to the effect that a special verdict not responsive to the issues or which omits to find one or more of the essential elements of the offense is fatally defective. Illustrative thereof are: State v. De-Witt, 186 Mo. 61, 67(5), 84 S. W. 956, 958(5), holding a special verdict finding "defendant guilty of carnal knowledge of a female over 14 and under 18 years of age" defective in that it failed to find prosecutrix "a female of previous chaste character"—an essential element of the offense—under a charge of having carnal knowledge of an unmarried female of previous chaste character, between eighteen and fourteen years of age. State v. Modlin, 197 Mo. 376, 379, 95 S. W. 345, 347 (stating, there being but one offense charged, a general verdict would have been good) and State v. Griffin, 278 Mo. 436, 439, 212 S. W. 877(1), are to a like effect. See State v. Miller, 255 Mo. 223, 229(1), 164 S. W. 482, 484(4), on unresponsiveness of a special verdict. In the DeWitt case [186 Mo. l. c. 71] it was said: "A practice has obtained in many of the circuits, which

we commend, of the courts giving the jury a form for their verdict, but when the verdict is returned and it is found uncertain or insufficient, the court should so state to the jury and require them to put it into proper form or with their consent to amend it in their presence.''

Recurring to the provisions of Section 4020, supra, the only provisions requiring the finding of a specific purpose and intention are: ''*or* abducted for the purpose and with the intention of causing . . . any . . . relative . . . to pay or offer to pay any sum as ransom or reward for the return or release of any such . . . person.'' Appellant's contention ignores the first subdivision of the statute making kidnaping or abduction, accompanied by secret confinement against will, a crime. The charge in the indictment must be interpreted in the light of the statute; and it is to be noted the instructions required that the jury find defendant guilty or not guilty according to the evidence adduced and the law as declared in the instructions; that the instruction (quoted above) does not make use of the term ''kidnaped'' in connection with the intent with which the act was committed; and that appellant's instruction No. 13, notwithstanding substantial affirmative evidence of an abduction for ransom, told the jury to acquit appellant unless they believed Dr. Kelley ''was abducted and confined against his will.'' The words ''kidnap or abduct'' appear in the statutory definition of the act prohibited by the first subdivision of the statute, whereas the word ''abducted'' alone appears in the statutory definition of the act prohibited by the second subdivision of the statute. The reintroduction of the verb ''abducted'' breaks the continuity of the thought and separates, so far as the instant issue is concerned, the prohibited acts defined by the statute. That the statute denounces more than one prohibited act is apparent from the infliction of punishment on persons ''guilty of the above mentioned *acts or act.*'' The act prohibited by the first subdivision of the statute may be accomplished without any purpose or intention to extort a ransom or reward. The accomplishment of the act effects the commission of the crime. Under it no occasion exists for the jury to find any specific intent activating the offenders. The words ''kidnaping, as charged in the indictment'' in the verdict differentiated the offense for which appellant was found guilty from the offense of ''abduction'' for ransom or reward, as defined by the given instructions, and included all the elements of said prohibited act. [See State v. Williams, 191 Mo. 205, 214(5), 90 S. W. 448, 451(4).] It was a general verdict of guilty of the prohibited act of kidnaping and secret confinement against will as distinguished from the prohibited act of abduction for ransom or reward defined in Section 4020, supra. What was said in State v. Meinhardt (Mo.), 82 S. W. (2d)

890, 893, in speaking of a verdict finding defendant "guilty of an assault to kill or do great bodily harm" under Section 4015, Revised Statutes 1929 (Mo. Stat. Ann., p. 2821), punishing those "convicted of an assault with intent to kill, or to do great bodily harm . . ." under a charge of violation of Section 4014, Revised Statutes 1929 (Mo. Stat. Ann., p. 2817), prohibiting assaults "on purpose and of malice aforethought" may be read with interest. That case holds: The gist of the crimes defined is assault; the punishment is for the assault and the intent is immaterial so long as it is made to do one or more of the acts mentioned in the section; and states: "Verdicts should be liberally construed in view of the intention of the jury and of the issues presented, and all reasonable presumptions are indulged to sustain a verdict." [See, also, State v. Cutler, 318 Mo. 687, 692(5), 1 S. W. (2d) 96, 98(10, 11).] While the instant issue may not be on all fours with the issue in the Meinhardt case, the instant verdict is open to no greater attack than the verdicts in the Williams and Meinhardt cases. It could be successfully pleaded in bar of any subsequent prosecution for the same offense. It, in itself, is sufficiently definite and certain.

IV. Appellant attacks Instruction No. 2, the main instruction for the State, his motion for new trial reading (for convenience we number the attacks): "Instruction number two given by the court is erroneous, illegal and bad, [1] because it is not bottomed upon, nor authorized by the allegations of the indictment and submits to the jury for their deliberation, acts and questions not within the issues in the case; . . . [2] because it hypothesizes the guilt of the defendant upon a finding of facts not comprehended by the allegations of the indictment and not within the purview of the statute pleaded in the indictment; . . . [3] because it is bottomed upon illegal incompetent hearsay evidence admitted over the objection of the defendant; . . . [4] because it authorizes the conviction of the defendant of the offense charged in the indictment upon a finding of facts tending to show only a conspiracy to commit said offense; . . . [5] because it is confusing, misleading, contradictory and inconsistent and commingles facts that are issuable facts with facts that are not issuable facts in the case."

Instruction No. 2 is approximately two pages long; and, briefly, requires the jury to find that appellant and his coindictees formed a conspiracy to commit the offense charged in the indictment; to find, if they found such a conspiracy existed, that one or more of said conspirators in the prosecution of said conspiracy committed said offense; and to find that appellant was one of said conspirators and did act in concert with the conspirators in the accomplishment of the conspiracy, and did commit the offense charged in the indictment. It is composed of a number of clauses embodying complete

thoughts, with subordinate clauses and phrases therein. This assignment in the motion for new trial fails to meet the requirements of Section 3735, supra, in that the particular portion of the instruction the pleader has reference to is not pointed out nor are the specific grounds or causes for the alleged error set forth in detail and with particularity. [See discussion under Point I, c., supra; State v. Mason, 322 Mo. 194, 206 [d], 14 S. W. (2d) 611, 617[15]; State v. Dollarhide, 337 Mo. 962, 87 S. W. (2d) 156, 157.] Under this assignment the court is left to speculate on what the pleader had in mind, and, if error be found in the instruction, speculation as to whether or not the pleader had the specific error in mind in drafting the motion. This, we are not required to do. [State v. Martin (Mo.), 56 S. W. (2d) 137, 140(10).]

In his brief appellant attacks the instruction on several grounds. We discuss them, but adhere to our ruling as to the insufficiency of the assignments in the motion for new trial.

a. Two of the attacks in the brief are made against the instruction in connection with appellant's attack on the verdict. (1) Appellant contends the instruction is erroneous because the jury were told they might convict if they found appellant committed the offense "for the . . . purpose and with the . . . intention of causing the wife . . . to pay or offer to pay any sum of money as ransom or reward for the release or return of the said Isaac Dee Kelley" for the reason said instruction submits the charges of intention in the alternative. [See discussion under (3), infra.] (2) Appellant also contends the instruction submits material issues which have no evidence to support them. From the development of the point in the argument the contention is that since the affirmative evidence bearing on the issue of intention shows only demands for a ransom, and since no reward was offered by anyone for the release of the abducted, the phrase in the instruction that the offense was committed with the intention of causing the abducted's wife to pay or offer to pay a reward for the release of the abducted is not supported by any evidence in the case. Appellant's argument touching a similar attack on the indictment states "kidnaping for reward contemplates no demand or other overt act" for the expected reward as that would be a demand for ransom, and "to make out its case the State need only show that a reward was offered by another for the return of the abducted person." We do not understand how the intention of the abductors is necessarily affected by what some third party might do. The offering of a reward by a third person evidences that person's intent. What the abductors do evidences their intent; and from the fact that they make a demand for ransom, it is plain the offense is committed for the purpose and with the intention of extortion and, from such showing, we think it a

legitimate evidentiary inference that the offense was committed for the purpose and with the intention of causing someone to pay or offer to pay a reward. (3) Considering the two attacks together: Neither of said specific grounds or causes is set forth in detail and with particularity in the motion for new trial; and first mentioned in appellant's brief are not for appellate review. [State v. Barbata. 336 Mo. 362, 375(4), 80 S. W. (2d) 865, 873(9), and cases cited.] Appellant was found guilty of "kidnaping," as charged in the indictment and, under such verdict, the specific purpose and intention with which the crime was committed is immaterial as the offender was found guilty of the act irrespective of the specific intent with which it was committed. [See Point II, supra.] Under such circumstances the error, if any, did not tend to prejudice the substantial rights of appellant upon the merits, is harmless and need not be reviewed. [State v. Sterling (Mo.), 72 S. W. (2d) 70, 71(1); State v. Baugh (Mo.), 217 S. W. 277, 280(2); State v. Goodwin, 271 Mo. 73, 83, 195 S. W. 725, 729(9), cases wherein complaints against instructions on a higher degree of the offense of murder than that for which appellant was convicted were not considered; State v. Henderson (Mo.), 284 S. W. 799, 800(5), where under a charge of burglary and larceny, complaint against the instruction on burglary was not considered where conviction was for larceny only. [State v. Burgess (Mo.), 193 S. W. 821, 825(19).]

b. From appellant's brief, we understand the allegations in assignment ▉ supra, attack the italicized phrases of the following portion of said instruction, to-wit: . . . and if you further believe and find . . . that defendant . . . was a party to said conspiracy . . . at the time it was made and entered into, as aforesaid, and did act and cooperate in concert with said persons, or any of them, in said conspiracy, to aid in prosecuting said conspiracy and agreement and in carrying out and accomplishing the purpose thereof in accordance with said common design, and did then and there . . . feloniously . . ., *acting in concert with other person or persons, or they or any of them acting in concert with him,* . . ." kidnap and cause Isaac Dee Kelley to be confined against his will, etc., because the instruction fails to require a finding that the person or persons committing said offense were persons acting within said conspiracy. Appellant argues the jury could find the offense was committed by appellant acting in concert with others, and still not find that Dr. Kelley was kidnaped in the prosecution of the conspiracy defined in the instruction. As hereinbefore pointed out, the jury were required to find, under the preceding subdivisions of the instruction, first, that defendant and his coindictees entered into a conspiracy to commit the offense charged in the indictment; and, second, that one or more of said persons who

entered into said conspiracy, if the same existed, committed said offense "in the prosecution of said conspiracy and agreement according to said common design;" and, third, the subdivision quoted. The instruction clearly required the jury to predicate a verdict of guilty upon a finding that the offense was committed in the prosecution and accomplishment of said conspiracy; that some of the persons entering into said conspiracy participated in the actual commission of the offense; and, also, that defendant was one of the parties personally participating in the actual commission of the offense. The instruction should be read as a whole and the second subdivision thereof answers appellant's contention.

■ V. Appellant's brief attacks Instruction No. 12. The assignment in the motion for new trial reads: "Instructions numbers 8, 9, 10, 11, 12, 14, 15, 16 and 18 are improper, illegal and erroneous and do not declare all the law in the case necessary for the jury in arriving at a correct verdict." The motion for new trial also attacks instructions 4, 5, 6, and 7 with like allegations but devotes a separate paragraph to the attack on each of said instructions. Such assignments have often been held insufficient to preserve any issue for appellate review. [See, among other cases, State v. Tharp, 334 Mo. 46, 52(3), 64 S. W. (2d) 249, 253(4); State v. Randolph (Mo.), 296 S. W. 440, 442(5); State v. Tummons (Mo.), 34 S. W. (2d) 122, 124(10); State v. Neely (Mo.), 56 S. W. (2d) 64, 67(5); also discussion under Point I, c, supra.]

■ VI. Appellant's motion for new trial complains of the action of the court in refusing certain instructions and in the failure of the court to instruct on specified points. Said assignments are to the effect that the court erred in refusing, "over the objection and exception of defendant, instructions D, E, F, G and H, asked by defendant," and "over the objection and exception of defendant, Instruction C, on the question of Adolph Fiedler being an accomplice to the offense and on the question as to the corroboration of said Fiedler, etc., asked by defendant," and "in failing to instruct the jury on the following questions of law . . .: 8. An instruction on the presumption of innocence." No reasons are given. A consideration of the assignment would necessarily involve a consideration of the instructions given by the court and if the subject matter of the refused instruction be there covered (as it appears to have been in many instances) speculation on the part of the court as to what the pleader had in mind in the drafting of said assignments. It would also involve in some instances a study of the evidence to ascertain whether or not the request was based upon any competent evidence in the case. In several decisions where the motion for new trial quoted the refused instruction the assignments were held insufficient because the reasons why the refusal was erroneous were

not specified. [See State v. McGee, 336 Mo. 1082, 1103(XIV), 83 S. W. (2d) 98, 110(47) and cases there cited; Point I, c., supra.]

■ VII. Appellant's motion for new trial attacks certain arguments made by the State's attorney, only one of which is mentioned in his brief. Witness Fiedler testified that the "yard," sometimes designated "parking lot," at his place had been thoroughly oiled a few days before the kidnaping and was soft. On the morning of April 21st, Dr. Kelley's automobile—a four passenger chummy coupe —was found in the northern part of St. Louis County. Officers made a search of the car, and found Dr. Kelley's ring back of the cushion and footprints made by oil and gravel next to the driver's seat. The State's attorney in the argument called upon appellant's attorneys to explain "how the tarvia, how the oil from Fiedler's place got on the floor of Dr. Kelley's car," and appellant contends the argument is an assertion that the oil found in Dr. Kelley's car was from Fiedler's place and erroneous argument. Prosecuting attorneys are not precluded from making effective arguments. Based upon facts in the record, unwarranted inferences and unsound arguments are not ground for reprimand or error. [State v. Wright, 319 Mo. 46, 4 S. W. (2d) 456, 458(10).] This and other arguments of counsel for the State mentioned in the motion for new trial were expressions of conclusions drawn from the evidence in the case and proper. [State v. Emory, 79 Mo. 461, 463(4); State v. Evans, 334 Mo. 914, 919(3), 68 S. W. (2d) 705, 708(4); State v. Sinovich, 329 Mo. 909, 917, 46 S. W. (2d) 877, 881(18).]

All issues discussed in the appellant's brief, and some others, have been disposed of. The following issues appear only in the motion for new trial.

■ VIII. Instruction No. 3 told the jury, if they believed appellant entered into a conspiracy with his coindictees to commit the offense and if they further believed any of said conspirators made any declarations or committed any acts while so combined and acting together in the prosecution and accomplishment of the "object and purpose" of said conspiracy "before such object and purpose was accomplished or abandoned," that such acts and declarations were the acts and declarations of appellant. The motion for new trial attacks said instruction by allegations similar to the attacks made against Instruction No. 2, which we have considered insufficient. The unquestioned evidence established that some parties acting in concert kidnaped and secretly confined Dr. Kelley against his will up to the time of his release to Mr. Rogers, and if appellant entered into the conspiracy to commit said offense he was responsible, in law, for any of the acts or declarations of his coconspirators while they were so combined and acting together in the furtherance of said conspiracy [State v. Darling, 216 Mo. 450, 459, 115 S. W. 1002,

1004; State v. Nasello, 325 Mo. 442, 461(f), 30 S. W. (2d) 132, 138(15); State v. Reich, 293 Mo. 415, 422(3), 239 S. W. 835, 837(4); Cases Point IX, infra]. We think the instruction not subject to attack on the ground it assumes the accomplishment or abandonment of the object and purpose of the conspiracy; for if the jury found that appellant entered into the conspiracy mentioned and acts and declarations had occurred in the furtherance of said conspiracy, it was unescapable, under the uncontradicted evidence, that they find said conspiracy had been accomplished or abandoned. The allegation that Instruction No. 3 conflicts with instructions Nos. 6 and 2 does not set forth wherein the conflict existed and is insufficient. [State v. Mason, 322 Mo. 194, 206(d), 14 S. W. (2d), 611, 617(15).]

 IX. Appellant's motion for new trial attacks the admissibility of certain evidence adduced on behalf of the State. The several assignments refer to the witness or witnesses giving the testimony and in some instances the substance of the testimony complained of. Each assignment alleges that the questioned evidence was admitted over the objection and exception of defendant, which, in itself, is not sufficient to preserve the issue for review. [See Point I, c., supra.] Some of the assignments relating to statements testified to as having been made by other coconspirators allege that the statements were made out of the presence and hearing of appellant and are hearsay and inadmissible; and a ruling on that issue will dispose of practically all of the assignments directed against the admission of alleged incompetent evidence. There was substantial evidence establishing the offense, the existence of the conspiracy and appellant's participation therein. The statements of the coconspirators made in the furtherance of the conspiracy although out of the presence of the appellant were competent evidence. [State v. Peak (Mo.), 68 S. W. (2d) 701(1); State v. Harrison, 263 Mo. 642, 657(5), 174 S. W. 57, 62(5); State v. Samis, 296 Mo. 471(7), 246 S. W. 956, 960(9), and cases cited; 16 C. J., p. 644, sec. 1283; Point VIII, supra.]

 X. Statements made by appellant to a third party bearing on a collateral matter but having evidentiary value in explaining the change of conditions in a place identified by Dr. Kelley as one of the places of confinement during the continuation of the offense are not subject to objection on the ground they are hearsay and were made after the completion of the offense.

 The motion for new trial assigns error in refusing to dismiss the jury panel on motion of appellant on account of a certain publication appearing in a named newspaper. The allegation does not prove itself, and, unsupported by any showing of record, is insufficient. [State v. Williams, 335 Mo. 234, 240(7), 71 S. W. (2d)

732, 735(9); State v. McGee, 336 Mo. 1082, 1102(XII), 83 S. W. (2d) 98, 110(45).]

Other assignments appearing in the motion for new trial fail to state any reason for the alleged error and do not preserve the issue for our review. They, as well as others, were deemed of insufficient merit for mention in appellant's brief.

After an examination of the record proper and the many assignments of error set forth in appellant's motion for new trial, we fail to find any error presented for review prejudicially affecting appellant's rights upon the merits. The judgment, accordingly, is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM.:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All concur except *Tipton, P. J.,* not sitting.