THE STATE v. ALFRED GREER, Appellant.—12 S. W. (2d) 87.

Division Two, December 18, 1928.

*W. A. Brookshire* for appellant.

*Stratton Shartel*, Attorney-General, and *J. D. Purteet*, Special Assistant Attorney-General, for respondent.

WALKER, J.—The appellant and one Robert Downs were jointly charged by information in the Circuit Court of St. Francois County

with an assault with intent to commit a rape. Downs applied for and was granted a change of venue from St. Francois County. No application therefor was made by the appellant. The day succeeding the granting of a change of venue to Downs the appellant was arraigned and upon his refusal to plead the court ordered a plea of not guilty to be entered in his behalf, a trial to a jury was had, the appellant was found guilty and his punishment assessed at five years' imprisonment in the penitentiary. From this judgment he appeals.

The prosecutrix was eighteen years of age and lived with her father and mother in the village of Esther in St. Francois County. She had known the appellant Greer about two years. At about 5:30 P. M., on the 20th day of February, 1927, she was playing ball in front of her father's house when appellant and Robert Downs came by in a Ford touring car. She had not previously known Downs. Apellant invited her to go riding with them. She refused, saying that she would not go with both of them. Whereupon appellant said that he would take Downs to his girl's home and they left. About ten or fifteen minutes later appellant returned and asked the girl if she was ready to go. Replying in the affirmative she got into the car and appellant drove over country roads for some time. Coming to a narrow road he drove to an old abandoned mining shaft where he stopped his car. The girl had not seen Downs from the time he and Greer left her father's home until the appellant stopped his car at the old mining shaft. When they reached there, Downs appeared and grabbed her and pulled her out of the car. Appellant remained in the car but kept the engine running rapidly while Downs threw the girl to the ground a few yards from the car. The girl screamed, hollowed and fought Downs while the appellant sat in the car and ran the engine for at least twenty minutes. Appellant made no effort to prevent or stop the assault Downs was making upon the girl. Aside from screaming she slapped and fought Downs and begged him to let her alone. Downs from time to time held his hand over her mouth and put his hands under her clothing and tore her bloomers off. The ground where the two were struggling was muddy. There was mud on the back of prosecutrix' cloak when she got up and her hair was full of dirt and mud.

While the assault was going on, two men, Boswell and Duncan, came upon the scene. Before they arrived appellant said to the girl: "Get in the car and let's get away from here before those fellows get here. Someone heard you scream." She refused to get into the car. Appellant then called to Downs and they got into the car and conversed in low tones. They started to drive their car past the car in which Boswell and Duncan had approached the scene of the assault. Boswell and Duncan stopped them, and asked the prosecutrix what was happening and she told them: "Those boys

were trying to make me come across." Neither Downs nor appellant made any reply to the accusation. The girl got into Boswell's and Duncan's car, and they took her to the office of a justice of the peace at Flat River.

Duncan testified that at about seven o'clock in the evening of February 20, 1927, he heard distressing screams and the following words: "Don't do that. You will ruin me. Don't do that," and between those words one scream after another. "They were piercing screams." He also heard an automobile engine running as if it was being raced. The screams and outcries and noise from the engine seemed to come from the south. After telephoning a constable, Duncan, in company with three other men, started in the direction from which the screams were coming. They were overtaken by Constable Boswell, who was also going towards the scene. When they reached the scene Duncan saw Downs and the appellant sitting in a Ford touring car. Appellant was at the wheel and Downs was in the seat at his side. He next saw the prosecutrix who was approaching from the rear of the car in which appellant and Downs were seated. The girl's hair was dishevelled, and she seemed in an excited state of mind, and was getting her breath short and trembling. She had no hat on. The place where they came upon the car of the appellant was in a secluded spot, no dwelling houses being thereabouts.

At the close of the State's testimony appellant offered an instruction in the nature of a demurrer to the evidence which was overruled by the court and appellant stood upon his demurrer.

I. It is contended that the court erred in requiring the appellant, who had been jointly charged with Downs, to be tried alone. The record shows that upon the application of the latter he had been granted a change of venue. After that order had been made the appellant, who did not join in the application, was tried and convicted as set forth in the statement of the facts.

The court did not err in thus proceeding, but conformed to the requirements of the statute (Sec. 3990, R. S. 1919), which provides:

"Where there are several defendants in any indictment or criminal prosecution and the cause of the removal thereon exists only as to part of them, the other defendants shall be tried and all proceedings had against them, in the county in which the case is pending, in all respects as if no order of removal had been made as to any defendant."

It is not an unusual occurrence under our criminal practice, where several persons have been jointly charged with a crime, for the trial

594

court to grant changes of venue upon the application of certain defendants. This, as the statute plainly prescribes, leaves the venue of the case in the county where the charge is preferred so far as concerns the defendants who have not applied for the change. This statute, declaratory of the rights of defendants, has, without change, been a part of our procedure since its enactment in 1833 (R. S. 1833, p. 488, sec. 33). It has been construed but once during that time. [State v. Wetherford, 25 Mo. 439.] The construction placed upon it simply gives judicial approval to the words of the statute. The granting of the change of venue as to Downs had the effect to create a severance. A like construction has been given to similar statutes in other jurisdictions. [Shular v. State, 105 Ind. 1. c. 291; State v. Martin, 24 N. C. 101, 123; Brown v. State, 18 Ohio St. 496, 509.] The contention, therefore, as to the irregularity of the court's action in this regard is overruled.

II. The contention is made that the evidence was insufficient to sustain the verdict. The statement of the facts made by the respondent—the correctness of which we have verified by an examination of the transcript of the testimony —furnishes ample affirmative proof of the sufficiency of the evidence of the appellant's guilt. This was a bestial and dastardly crime. Every act of the appellant and Downs from the time they first accosted the girl shows they were acting in concert. The appellant pretended to rid himself of Downs by driving away and returning for the girl without him. He induced her to get into the car with him and after driving with seeming aimlessness over miles of country roads finally took her to an out-of-the-way place where it is evident Downs was awaiting them. Upon their arrival the latter began his violent assault upon the girl (which the appellant in no way sought to prevent) and was only deterred from accomplishing his lustful purpose by the timely arrival of Boswell and Duncan, who were drawn to the scene by the girl's screams and cries for help. Not only did the appellant inertly sit in his car while this outrage was being attempted, but he kept the engine of the car running, evidently to afford a ready means of escape in the event they were interrupted. In the face of this summary of the facts, to say nothing of other convincing evidence of the appellant's guilt in the complete statement, it shames a sense of decency to contend that there is not enough evidence to sustain the verdict.

III. The argument of the counsel for the State is assigned as error. One of the grounds of complaint is that counsel commented

upon the failure of the appellant to testify. The record does not sustain this contention. There is no reference, direct or indirect, to the failure of the appellant to testify. What was said by counsel, which is attempted to be construed as a reference to the appellant, was "that none of the testimony of the witnesses for the State had been denied; if their testimony was false Robert Downs was a proper witness to be used by the defendant." Downs had been indicted with the appellant but the latter had applied for and had been granted a change of venue. This, as we have shown, effected a severance and the trial of the appellant was as completely divorced from that of Downs as if they had not been jointly charged. It cannot be said, therefore, with a proper regard for the rules of construction, that Downs was a co-defendant of the appellant and hence sustained such a relation to the latter's trial as to render the remark of the prosecuting attorney prejudicial. The remark was not a misstatement of the law. Downs was a competent witness for the appellant. Even if it be held that he was a co-defendant he may testify for the appellant at the latter's option. [Sec. 4036, R. S. 1919; State v. Chyo Chiagk, 92 Mo. 395, 45 S. W. 704.] It was within the limits of legitimate argument for the counsel for the State to assert that no effort had been made to refute the testimony of the State's witnesses and Downs was a competent witness for that purpose. It is true, an inference unfavorable to the defense may be drawn from the counsel's remarks. The same may be said, however, of any argument discussing the evidence and urging the conviction of the accused. Neither an unsound argument nor an unwarranted inference will be a ground for reprimand or a basis of error. [State v. Wright (Mo.), 4 S. W. (2d) 456.] It is only when such remarks are clearly prejudicial that they may properly be held to work a reversal.

In State v. Emory, 79 Mo. l. c. 463, this court, speaking of a contention that the judgment should be reversed on account of the remarks of the prosecuting attorney, said:

"The subject of the remarks and the substance thereof was the failure of the defendant, after having the witness subpoenaed, to place him on the stand, because he knew he was guilty of the charge and was afraid he would be condemned if he did, etc. We see no reason why it is not as legitimate for the State to call the attention of the jury to facts from which unfavorable inferences may be drawn, as it is for any other suitor in the courts."

The ruling in the Emory case, in this regard, has received affirmative approval of this court in State v. Parker, 172 Mo. 191, 204, 72 S. W. 650, in which the court, in effect said: It is legitimate argu-

ment for the prosecuting attorney to call attention to the fact that an eyewitness of the homicide and who had testified for the defendant at a former trial, had not been subpoenaed and did not testify. The remark made by the prosecuting attorney in the instant case was of a like character and under a similar state of facts to the argument complained of and held to be harmless in the Parker case.

It is contended, however, that some sort of prejudice inheres in the remark in the instant case because the appellant was jointly indicted with Downs and it is sought by reason of this fact to invoke the statutory inhibition (Sec. 4037, R. S. 1919) against a reference to the failure of one on trial or his wife to testify. It was never intended that the statute should be given this latitudinary construction. Its restrictions are limited to their express terms. It was so held in State v. Janes (Mo.), 1 S. W. (2d) 138, in which we said that "the statutory restrictions against any reference by counsel to the failure of the accused to testify in his own behalf and against the consideration of that fact by the court or jury" must be limited to their express terms. Thus limited the statute cannot, except by judicial legislation, be held to inhibit a reference to the competency of Downs as a witness for the defense and by implication his failure to testify. We are referred by appellant to the case of State v. Weaver, 165 Mo. 1, 65 S. W. 308, to sustain his contention that the remark complained of in the instant case was error. It was held in that case, where the accused and two others were jointly indicted for murder, that it was error for the counsel for the State on the trial of the accused to remark to the jury on the failure of the co-indictees to testify as to their crime. To sustain this ruling it became necessary to read into the statute (Sec. 4037, supra) the words "or co-indictees." Passing, as the writer of that opinion might have said, *sub silentio*, the abundant reasons that might be urged against the correctness of that manner of construing a statute, it will be enough to say that the interpretation given to it in the Weaver case has been overruled, State v. Larkin, 250 Mo. 218, 242, in that the section (4037, supra), being "a modification of the common law ought to go no further in its construction than its terms provide." The rule of construction, as thus announced, has been followed in subsequent cases, notably in the case of State v. Janes, supra. Aside from these rulings, sufficiently definite within themselves to eliminate the Weaver case in this regard as a precedent, it will be found that the facts in the instant case are altogether different from those in that case. At bar, Downs was a competent witness for the appellant. The reference thereto by the prosecuting attorney was not a misstatement of the law. In the Weaver case the co-indictees were not competent witnesses for the accused and the prosecuting

attorney's reference to their failure to testify, carrying with it the assumption of their competency, was a misstatement of the law and therein it was held the error consisted. From whatever vantage, therefore, the Weaver case may be viewed it cannot be held to support the appellant's contention. First, because it is based upon an unauthorized interpretation of the statute; second, because it has been overruled; and, third, because the error held to have been there committed by the prosecuting attorney misstating the law, is not to be found in the case at bar.

The ruling of this court in State v. Watson (Mo.), 1 S. W. (2d) 837, cited by appellant, does not support his contention. In that case the remark of the prosecuting attorney held to be error was confined to his reference to the failure of the accused and his wife to testify. As emphasizing this limitation the court held that the failure of the accused to produce other witnesses who were present when the search of his house was made by the sheriff, was properly commented upon by the prosecuting attorney.

The appellant's contention in this regard should therefore be overruled. .

IV. It is further contended that the prosecuting attorney's appeal to the jury to convict because of a fear that all law may be set aside was an improper argument.

If counsel for the State were "cabined, cribbed and confined" in their remarks to juries as is insisted in this contention, it would, in effect, put the seal of silence upon their arguments. Such is not the construction placed by the law upon their rights. Their arguments are not to be limited to a mere recital of the facts and a discussion of the instructions, but they may, in addition to other things authorized by the record, comment upon the nature of the crime, the effect of its commission and the salutary results which will follow the enforcement of the law providing for its punishment. For example, a prosecutor may comment on the prevalence of crime and tell the jury that they are there to punish criminals and that they may in determining the punishment in the case before them, consider the effect their verdict will have in deterring others from the commission of crime. [State v. Murray, 292 S. W. (Mo.) 434.] In this connection the seriousness of the offense with which the accused is charged may be commented on. [State v. Griffin (Mo.), 6 S. W. (2d) 866.] It has also been held that it is not error for a prosecutor to refer to the prevalence of crime and the jury's duty to uphold the law and to draw inferences therefrom as to the effect of a failure to enforce the law by referring to the homes ruined by the conditions created by the illegal liquor traffic.

[State v. Marshall, 297 S. W. (Mo.) 63.] These and numerous other cases which might be cited illustrate the liberal latitude that is allowed prosecutors in their arguments. There is no merit in this contention.

The judgment is therefore affirmed. All concur.