THE STATE v. GEORGE McKEEVER, Appellant.—101 S. W. (2d) 22.

Division Two, December 9, 1936.

*Geo. F. Hollis* and *North T. Gentry* for appellant.

*Roy McKittrick*, Attorney General, and *Drake Watson*, Assistant Attorney General, for respondent; *Max Wasserman, Aubrey R. Hammett, Jr.*, and *Arthur O'Keefe* of counsel.

BOHLING, C.—By information filed in the Circuit Court of Boone County, George McKeever was charged with the murder of Ben Booth. Granted a change of venue, he was found guilty of murder in the first degree and his punishment assessed at death by a jury in the Circuit Court of Callaway County. He appeals from the judgment entered thereon.

The pertinent facts may be stated briefly. Federal Highway No. 40 runs in an east and west direction near the north corporate limits of the city of Columbia, Missouri. Coming from the north, Federal Highway No. 63 joins Highway 40 at Range Line Street, a north and south street of Columbia, and proceeds eastwardly coincident with Highway 40 a distance of less than a mile, and thence southwardly. The highways approaching said Range Line Street junction are paved, Highways 40 and 63 with concrete. In the early afternoon of June 14, 1933, Sheriff Roger Wilson of Boone County, Missouri, and Sergeant Ben Booth of the Missouri Highway Patrol, in charge of the sub-station at Columbia, Missouri, stationed themselves on the south side of Highway 40 and opposite the Range Line Street junction of Highway 63. Sergeant Booth was dressed in regulation uniform of the Highway Patrol and Sheriff Wilson in civilian clothes. Francis McNeiley, who was twenty-one years of age at the time, was driving a black Ford V8 coupe south along Highway 63, approaching said junction. George McKeever, who was thirty-three years old, occupied the coupe with McNeiley. Sergeant Booth raised his hand and signaled the coupe to stop. Pulling a little to the right, the coupe stopped near a water intake constructed in the west curb of Highway 63, a few feet north of the said junction with Highway 40. McNeiley had a .38 Colt's blue steel revolver concealed in the pocket of the driver's door of the coupe. McKeever had a .45 Colt's army model

automatic pistol concealed under his leg by the right door. A high powered rifle, described by McNeiley as a German Mauser, was under a blanket between the rear body of the car and the seat. McNeiley testified (over the objection of appellant—see as to admissibility State v. Messino, 325 Mo. 743, 765(b), 30 S. W. (2d) 750, 760(14) ; State v. Stogsdill, 324 Mo. 105, 123, 23 S. W. (2d) 22, 28(13)) that Mc-Keever and he had agreed they could not afford to be taken, and if there was no other way out they would shoot. Sergeant Booth came up and stopped immediately in front of the right-hand door of the coupe. He faced the car, one arm on the door, and questioned Mc-Neiley, asking him where he had been, where he was going and what he was doing. He started questioning McKeever and then tried to open the door but it was locked, and he reached in and unlocked it with the inside handle. As Booth was opening the door, McKeever shot. This bullet (hereinafter designated the ''Booth'' bullet) struck Booth above and behind his left knee, passed through the tissues for a short distance, emerged, and again entered the leg, finally lodging behind the protuberance of the outer ankle, from whence it was recovered. Sheriff Wilson was approaching the coupe. He shot into the coupe. McNeiley pulled his gun, shot through the windshield, and Wilson, shot through the head, fell. With McKeever's shot, Booth grabbed him, trying to get possession of the gun; and, leaning back on his right leg, pulled McKeever out of the coupe. McKeever and Booth went to the pavement near the right rear wheel of the coupe. McKeever was on top of Booth. Each was struggling for the possession of the automatic; Booth holding McKeever close and McKeever trying to free himself. McNeiley stepped to the rear of the coupe. Booth was on his right shoulder or elbow, with his back and side exposed to McNeiley. McNeiley then shot Booth. This bullet (a lead bullet) entered in the general region of the left shoulder blade, crossed the mid-line, and came to rest in the soft tissue over the right shoulder, from whence it was recovered. Booth released his hold on McKeever. McNeiley returned to the driver's seat and made ready to go. Mc-Keever tried several times to operate the automatic, but it failed. He then went back to the car, obtained McNeiley's revolver, returned to where Booth was lying, shot Booth; and, making sure Booth was dead or dying, jumped into the coupe, which proceeded rapidly east on Highway 40. This bullet was not recovered. It passed through Booth's body, passing, en route, through his heart sac and the opening into the heart chamber. It was fatal.

Appellant offered one witness who testified that a picture of ''Pretty Boy'' Floyd resembled the murderer, but on cross-examination she admitted appellant very much resembled the guilty party in certain respects. From the other witness appellant adduced testimony tending to impeach witness McNeiley on a collateral matter.

■ I. Counsel for McKeever, contending State's witness McNeiley, who detailed the occurrence, is unworthy of belief, assert (relying on cases like State v. Liston, 315 Mo. 1305, 292 S. W. 45) a conviction may not be sustained on his testimony. We need not discuss the applicability of the law contended for by appellant to witness McNeiley; as in the instant case we are not confronted with the situation existing in the cases relied on by appellant. Here, the conviction does not hinge on the testimony of McNeiley. Eyewitnesses, other than McNeiley, to the homicide positively identified McKeever (as well as McNeiley), and testified McKeever was the man struggling with Sergeant Booth and the man who fired the fatal shot into his body. A number of other witnesses were more or less positive in their identification of McKeever. They also established other material facts directly connected with the homicide. Much additional corroborating testimony is in the record. Witnesses were produced who did not see the homicide, but who identified the black Ford V8 coupe and McKeever as one of its two occupants immediately prior and subsequent to the shooting. This mass of evidence need not be detailed. So much thereof as may be essential to an understanding of the issues presented will be set forth in connection with the discussion of the particular issue.

■ II. Notwithstanding sixty separate assignments appear in the motion for new trial, a number of errors are specifically alleged in appellant's brief which are not mentioned or are not sufficiently preserved in his motion for new trial. The trial court was not called upon to review its action thereon and said issues are not preserved for appellate review. [State v. Barbata, 336 Mo. 362, 375(4), 377(6), 80 S. W. (2d) 865, 873(9,11), and cases cited.]

■ III. On the morning of the trial appellant filed an application for a continuance, which the court, after taking the same under advisement, overruled. Appellant asserts this was error.

Appellant's affidavit states that Eloy C. McKeever, who since December, 1934, had been confined in a county jail and the State penitentiary at Stillwater, Minnesota, would testify that Francis McNeiley (brother-in-law of the McKeevers), told him on October 1, 1934, at Burlington, Iowa, that he (McNeiley) and an Italian named "Tony" had killed two officers at Columbia, Missouri, on June 14, 1933; and that Robert Hicks, located at the time of the filing of the affidavit at Carbondale, Illinois, would testify that on June 14, 1933, he was traveling on a side road about four miles north of the junction of Highways Nos. 63 and 40 in Boone County, Missouri, and came upon an automobile, occupied by two men, in a ditch, and pulled their car out of the ditch; that on June 11, 1935, he viewed pictures bear-

ing the names of Francis McNeiley and George McKeever; and that he recognized the picture of McNeiley as that of one of said men, but the picture bearing the name of George McKeever was not a picture of the other of said men.

The granting of a continuance is addressed to the sound discretion of the trial court. The purported evidence of Eloy McKeever and of Robert Hicks does not bear directly on the guilt or innocence of the appellant. Its stated purpose—the contemplated impeachment of another witness, McNeiley—has been considered, under the facts, insufficient to require a continuance [State v. Howell, 117 Mo. 307, 340, 23 S. W. 263, 272; State v. Walters (Mo.), 29 S. W. (2d) 89, 91(4); 3 Wharton's Cr. Proc. (10 Ed.), sec. 1525]. These witnesses were out of the State. It may be assumed witness McKeever's residence was of some permanency; but the affidavit states that witness Hicks "is now located at Carbondale," Illinois, and leaves said witness' continued presence at Carbondale and the procurement of his evidence problematical. [See State v. Crane, 202 Mo. 54, 75, 100 S. W. 422, 427(3).] Appellant's affidavit states that appellant's wife and sister "hitch-hiked" from Missouri to Minnesota and obtained the information from Eloy McKeever on June 6, 1935; that they then "hitch-hiked" to Columbia, Missouri, and appellant first learned of said evidence on June 10, 1935; and that, "while going through the State of Illinois," the wife and sister met said Hicks on June 11, 1935. The information was filed January 23, 1935. No allegation of any effort at communication between appellant and his brother Eloy appears to have been made prior to said June 6th. Any communication addressed to Eloy McKeever advising of the charge against appellant should have brought the information Eloy acquired on and possessed subsequent to October 1, 1934. It appears that appellant's wife and sister, subsequent to their imparting to appellant on June 10 what the evidence of Eloy McKeever would be, contacted "while going through the State of Illinois" at Carbondale, Illinois, stranger Hicks, secured the needed information and returned to Fulton and informed appellant's attorneys thereof in time for the same to be incorporated in the affidavit filed on the morning of June 12. This, no doubt, strained the court's credulity. The affidavit does not establish that the picture bearing the name of George McKeever and viewed by Hicks was the picture of said McKeever. Although not within the purpose expressed in appellant's affidavit, Hicks' evidence might bear indirectly on an alibi. Still, it is negative in its nature, makes no attempt to negative appellant's ability to have been present at the scene of the offense [State v. Dale, 89 Mo. 579, 581, 1 S. W. 760, 761], and does not attempt to account for his presence prior to or at the time of its actual commission.

IV. Prior to the trial appellant filed a motion alleging (1) that in extradition proceedings of·one Adam Richetti the prosecuting attorney of Boone County filed a written statement under oath with the Governor of Missouri wherein he charged that said Richetti killed Ben Booth; (2) that said prosecuting attorney procured affidavits of certain persons (unnamed) to the effect they identified a picture of said Richetti as the man who killed Ben ,Booth, and (3) that Francis McNeiley made one or more written confessions in which he stated Eloy McKeever shot and killed Ben Booth; and prayed the court that said prosecuting attorney be required to produce said documents, or copies thereof. Appellant's motion for new trial, other than asserting the court ''erred in overruling'' said motion, does not set forth the grounds or causes of the alleged error, and is insufficient to preserve the issue for review. ·[Sec. 3735, R. S. 1929, Mo. Stat. Ann., p. 3275.] The documents referred to could only serve for purposes of impeachment; and, under the ruling of this court en banc in State ex rel. v. Hall, 325 Mo. 102, 27 S. W. (2d) 1027 (citing· a number of cases, overruling State v. Tippett, 317 Mo. 319, 326(6), 296 S. W. 132, 135(7)—relied on by appellant—and following State v. Fitzgerald, 130 Mo. 407, 424, 32 S. W. 1113, 1117), and State ex rel. v. Terte, 324 Mo. 925, 25 S. W. (2d) 459, the trial court correctly ruled the motion. The prosecuting attorney's official affidavit filed with the Governor was not evidence of facts and should have been as readily available to appellant as to the State. Appellant did procure a certified copy of said affidavit and offered the same in evidence. We do not find any State witness identifying appellant who testified he had previously identified a picture of Richetti as the murderer of Booth. Means were available whereby appellant might have obtained from the witnesses whose names were endorsed on the information that information alleged in the motion to be in the possession of the prosecuting attorney, which, if in his possession, must have been the result of investigations on behalf of the State. During the examination of witness McNeiley appellant was furnished and, with the consent of the State, offered in evidence the only written confession of said witness in which he stated Eloy McKeever committed the offense and counsel cross-examined said witness thereon.

V. Insofar as attempted to be saved by objection and exception below, an assignment in the motion for new trial complains ,of the refusal of the trial court to permit appellant to inquire on the *voir dire* examination of seven members of the panel if they would accept the testimony of accomplice McNeiley the same as that of a disinterested and uncontradicted witness if it developed on the trial of the case that he had made a written confession in which he stated that Eloy McKeever had murdered Booth and later changed that

statement and said that appellant was the person who had killed
Booth. A liberal latitude is allowed in the examination of jurors on
the *voir dire* for the purpose of challenge for cause and, within rea-
sonable limits, for favor [State v. Miller (Mo.), 207 S. W. 797, 798(1),
and cases cited; Theobald v. St. Louis Transit Co., 191 Mo. 395, 419,
90 S. W. 354, 359]. However, the trial court is vested with a large
discretion in determining the scope of the examination [State v.
Pinkston, 336 Mo. 614, 618(3), 79 S. W. (2d) 1046, 1049(7)]; and, in
ruling on the propriety of inquiries as to the action of jurors under
certain contingencies, we said in Keegan v. Kavanaugh, 62 Mo. 230,
232: "If counsel are allowed to go into hypothetical assumptions of
how the evidence will turn out on the trial, and how in certain con-
tingencies jurors would act, it would be impossible to get juries,"
where the inquiry was as to the jurors' actions if they considered the
evidence evenly balanced; and in State v. Tally (Mo.), 22 S. W. (2d)
787, 788(4): "Counsel may not, in advance, ask him to speculate
upon what he might do, and how his verdict might be influenced
by certain contingencies that may arise later." In State v. Gifford
(Mo.), 186 S. W. 1058, 1061(8), we upheld the trial court's refusal to
permit inquiry if the jury would give defendant's testimony the same
weight and credit as that of any other witness if the evidence es-
tablished defendant's good character, peaceful citizenship and truth-
fulness. In the instant case, the court informed counsel, as we read
the record, inquiry of the nature indicated would be permitted if it
embodied the thought of the jurors acting in conformity with the ap-
plicable instructions of the court. It is the duty of the trial court to
instruct the jury on the law of the case, including, in proper instances,
the factors that may be taken into consideration in determining the
weight and value of a witness' testimony and a cautionary instruc-
tion on the testimony of an accomplice; and it is the duty of the jury
to follow the law as declared by the court in the instructions. Ap-
pellant's inquiry was based upon a detail of the contemplated evi-
dence in the case. It sought to ascertain, independent of the law on
the subject, how the jurors would act in the event the contemplated
evidence be adduced, and have them speculate, irrespective of other
factors they might lawfully take into consideration, on the weight of
the testimony of and the credibility they would accord the witness
McNeiley. Some of the jurors stated they would conform with the
instructions of the court on the subject. We think the inquiry im-
proper.

■ VI. a. Complaints are made in appellant's brief that error oc-
curred in several specified instances in the admission of irrelevant
testimony tending to establish the commission by appellant of several
other specified crimes alleged to be disconnected from the crime for

which he was on trial. The assignments bearing on the issue in the motion for new trial fail to specify any witness testifying to the commission of other crimes by appellant or any specified crime to which the assignment might refer and, in some instances, any ground upon which the alleged error was based, and do not meet the requirements of Section 3735, supra, necessary to a preservation of the issue for appellate review. State v. Ryan (Mo.), 50 S. W. (2d) 999, 1000(8), states: "It is sufficient if the assignment contains the name of the witness, the substance of the testimony complained of, and the grounds of its admissibility or inadmissibility." See also: State v. Bagby, 338 Mo. 951, 93 S. W. (2d) 241, 247(4); State v. Rosegrant, 338 Mo. 1153, 93 S. W. (2d) 961, 967(7), 974(27); State v. Buckner (Mo.), 80 S. W. (2d) 167, 169 (10, 11).] A consideration on the merits of appellant's principal complaint, as disclosed in his brief, does not aid appellant under the facts of the instant case.

■ b. During the course of the opening statement the prosecuting attorney stated the evidence would establish that in August, 1930, the .45 automatic had been taken from a bank by the appellant. Witness McNeiley was apprehended on November 25, 1934, near Allerton, Iowa, and had possession of a .45 automatic and other guns. He testified appellant told him he had taken the automatic from a bank. Three witnesses testified that they were employed by the Bank of Gretna, Nebraska, on August 14, 1933. They gave testimony to the effect that a pistol exactly like said .45 automatic was kept at said bank in a drawer immediately under the cashier's window, and two of said witnesses testified that on said August 14, appellant and another entered said bank, locked them in the vault, and upon their release said automatic was missing. The cashier of the bank testified that the automatic was the only pistol he ever had in the bank; that in 1925 he fired a shot from the automatic through the floor of the bank and into the ground underneath; and that on Good Friday in 1935 he went to the bank and by means of a wire pushed through the hole made in the floor by said bullet and digging up the dirt underneath the bank at the point indicated, he recovered a bullet, hereinafter referred to as the "bank" bullet. The "Booth" bullet, the "bank" bullet and the automatic were delivered to one Merle A. Gill, a ballistician. Gill testified he fired a test bullet from the automatic into some cotton, recovered it therefrom, and that, in his opinion, the three bullets had been fired from the same gun. We think this evidence was admissible. It tended to identify one of the guns used in the commission of the homicide, establish appellant's access to and opportunity to be in the possession of said gun, and to corroborate the testimony of witnesses who were not absolutely positive in their identification of appellant as one of the parties participating in the homicide. The general rule, urged by appellant as applicable, to the

effect that evidence showing or tending to show the commission of another wholly independent and disconnected crime by the accused is irrelevant and inadmissible, is subject to the exception, as well recognized as the rule, stated, among others, in State v. Kowertz, 324 Mo. 748, 756, 25 S. W. (2d) 113, 116(5) (quoting People v. Molineux, 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193), and other cases, as follows: " 'Generally speaking, evidence of other crimes is competent to prove the specific crime when it tends to establish . . . (5) the identity of the person charged with the commission of the crime on trial.' " [State v. Barnes (Mo.), 204 S. W. 264, 266(8); State v. Harrison (Mo.), 285 S. W. 83, 86(8); State v. Dunwoody, 231 Mo. 48, 53, 132 S. W. 227, 229. See also State v. Isaacs (Mo.), 187 S. W. 21, 22(2).] The evidence being admissible, reference thereto in the opening statement was proper [State v. Kowertz, supra].

■ VII. A general complaint is made in the motion for new trial that the court admitted evidence to the effect appellant, prior to June 14, 1933, was known by other names. McNeiley and appellant resided on a farm near Harviell, Missouri. Mr. and Mrs. Ed Gerdes, neighbors, testified they knew appellant as Claude Adams and McNeiley as Dan Weber. McNeiley testified appellant was also known as Ralph Bennett. In April, 1933, McNeiley purchased a second hand model T Ford automobile in St. Louis and secured a certificate of title and Missouri 1933 registration No. 351,746 for said automobile under the name of Joe E. Clark. Appellant assisted in towing this car to the farm. McNeiley left the farm June 4, 1933. Appellant left the farm June 11 and returned July 3rd, 1933. Mrs. Gerdes stayed with appellant's wife during his absence. A witness to the homicide secured the first five numbers of the Ford V8's license plate, but could not make out the last number. Said numbers were 351,74-. Other witnesses testified that on the afternoon of the homicide a Ford V8 was driven rapidly up to a service station in Englewood, Boone County, Missouri, and serviced with eight gallons of gasoline; and that the occupants, identified as appellant and McNeiley, departed without paying for the merchandise. One witness wrote down the number of the license tags of said Ford. Said number was 351,746. This testimony tended to establish the identity of appellant, his opportunity to have committed and his connection with the homicide; and was not subject to the objection that, since the information did not charge appellant under any *alias*, testimony to the effect he was known under another name was inadmissible, or (as first specifically disclosed in appellant's brief) that it tended to establish an independent crime or crimes.

■ VIII. A complaint of a general nature is made in the motion for new trial on the admission of the testimony of witness Gill, the

expert on ballistics. The testimony tended to establish his qualifications. The record indicates this was his 191st appearance on the stand as a ballistic expert, and the testimony went into some detail as to the extent of the equipment he maintained for making the necessary investigations prior to a determination of the facts testified to. His testimony was supplemented by photographic exhibits, displaying in juxtaposition, as we read the record, correspondingly contiguous small portions of the surface of the "Booth," "bank," and test bullets, enlarged many times. An examination of the exhibits reveals at once the striking similarity (as, if not more, readily apparent as in the case of handwritings) in the markings of the bullets and the unbroken machine-like continuity and symmetry of the impressions left on the respective bullets as they were forced through the barrel of the automatic. The testimony was admissible. [See State v. Shawley, 334 Mo. 352, 374(8), 67 S. W. (2d) 74, 85(20); Evans v. Commonwealth, 230 Ky. 411, 19 S. W. (2d) 1091, 66 A. L. R. 360, and note p. 373.]

IX. Error is assigned in the admission of testimony by witness Gill to the effect that in his opinion the "bank" bullet and the "Booth" bullet were fired out of the .45 automatic on the stated reason said testimony was too remote because said "bank" bullet had been in the ground ten years before removed for the purpose of identification. We fail to find an objection lodged against this particular testimony. One witness described the bullet as a "steel jacket" bullet; another, as a lead bullet, incased in copper, covered with a nickle plating. The bullet was not ephemeral or evanescent in nature, but possessed qualities of inherent permanency. The showing of record is that the identification was readily made. The evidence was admissible [King v. Missouri Pac. Railroad Co. (Mo.), 263 S. W. 828, 833(8)]; its weight and value, affected by the burial of the bullet in the ground and the lapse of time, for the jury.

X. The point is made in the motion for new trial that the evidence tending to show that the "Booth" bullet was fired from the .45 automatic was prematurely admitted in that appellant had not been connected, at the time, with said automatic. Aside from the law to the effect that the order of proof rests largely in the discretion of the trial court [State v. Pierson, 337 Mo. 475, 482(2), 85 S. W. (2d) 48, 51(3)], and that subsequent to the introduction of testimony identifying the gun from which the bullets were fired direct evidence was adduced connecting appellant with said gun, the record discloses testimony had been adduced showing appellant's access to and opportunity to be in possession of said automatic prior to the introduction of the questioned testimony.

XI. Appellant's motion for new trial alleges error in that the court permitted members of the State Highway Patrol to take an active and officious part in and to parade around the courtroom during the trial of the case, to be seated one in front of the jury, two behind the jury and one on the west side of and next to the jury, to lock, bolt and bar the double doors of the courtroom and the door of said courtroom opening into the sheriff's office, to stretch a rope across the only stairway leading to the courtroom and thereby exclude persons from attending the trial, and, in the presence of the jury, to escort the appellant into and out of the courtroom while handcuffed, on the theory said conduct operated to the prejudice of appellant and prevented a public trial. These allegations do not prove themselves [State v. Williams, 335 Mo. 234, 240(7), 71 S. W. (2d) 732, 735(9)].

Affidavits in support of these assignments in the motion for new trial were filed on behalf of appellant and counter affidavits were presented on behalf of the State. One of the affidavits on behalf of appellant was made by one of his attorneys of record. Our search of the record fails to disclose that certain of the facts set forth in said affidavit were called to the court's attention during the progress of the trial; for instance (we need not detail all of them in view of the conclusions hereinafter reached) that Highway Patrolmen permitted appellant to appear in shackles before the jury and escorted him to and from the courtroom. Appellant's counsel had knowledge of these allegedly purported irregularities at the time of their occurrence and should have properly and timely presented them to the court instead of withholding, pending the verdict of the jury, the request for a ruling with respect thereto until the filing of the motion for a new trial. [State v. Jones, 276 Mo. 299, 301, 207 S. W. 793, 794(2) and cases cited; State v. Tarwater, 293 Mo. 273, 289, 239 S. W. 480, 484(10); State v. Glazebrook (Mo.), 242 S. W. 928, 934(18); State v. Gilmore, 336 Mo. 784, 789(4), 81 S. W. (2d) 431, 433(5).]

But; aside from other possible reasons, some of appellant's contentions are not supported by the record and others may not be sustained on their merits. During the progress of the trial there was a showing that four members of the State Highway Patrol were present during the trial; that they were present at the request of the sheriff of Callaway County, and that two members of said patrol testified as witnesses in the case. They wore the regulation uniform, including a pistol, exposed to view, with the exception that on the days the two members of said patrol appeared as witnesses, said patrolmen were dressed in civilian clothes. There is no testimony to the effect that any member of said patrol was guilty of any misconduct. Among the duties of the State Highway Patrol is the policing, etc., of the State highways [Laws 1931, p. 234, Sec. 12, Mo. Stat. Ann., p. 6974].

They are "declared to be officers of the State of Missouri and shall be so deemed and taken in all courts having jurisdiction of offenses against the laws of this state," and are vested with the powers conferred by law on peace officers ("sheriffs, police officers and other peace officers of this State"—Laws 1931, p. 231, Sec. 2, Mo. Stat. Ann., p. 6970), except they may not serve or execute civil process [Laws 1931, p. 234, Sec. 13, Mo. Stat. Ann., p. 6975] and are restricted in the right or power of search and seizure to the taking of deadly and dangerous weapons from persons under or about to be arrested [Ibid., Sec. 16, Mo. Stat. Ann., p. 6976]. They have authority to arrest any person detected in the act of violating any law of the State [Sec. 13, supra] and their powers and duties are supplementary to, and not a limitation on, the powers and duties of sheriffs, police officers, or other peace officers of the State [Laws 1931, p. 231, Sec. 1, Mo. Stat. Ann., p. 6970]. There is no showing of record that members of the State Highway Patrol exceeded their authority in executing the instructions of the court and its officials in the maintenance of order to the end that the trial proceed with dispatch and decorum. There is no showing they paraded around the courtroom during the trial of the case. While an objection does not constitute evidence of the facts stated in the objection [State v. Duncan, 116 Mo. 288, 308(4), 22 S. W. 699, 704(4)], if it be inferred from an objection interposed that at one time during the progress of the trial one of the patrolmen was sitting behind the jury, we do not consider his mere presence there ground for reversal. The court, in passing on the motion for new trial, specifically found that appellant was not shackled while in the presence of the jury or while the trial was in progress; that the trial was public; that the courtroom was open to all so long as its capacity permitted; that it was filled to capacity at all times while the trial was in progress; that a sworn officer had been stationed at the steps leading to the courtroom with instructions to admit persons so long as there was capacity to accommodate them and thereafter not to allow others to enter until persons therein had left; that the public was not barred from the courtroom; that the door immediately south of the main door was open at all times, and the precautions taken were simply for the purpose of handling the crowd. While care should be taken to prevent the creation of an atmosphere prejudicial to an accused, courts may take all reasonably necessary precautions for the maintenance of order during the progress of a trial [State v. Saale, 308 Mo. 573, 579(1), 274 S. W. 393, 395(1)], and for the retention of the custody of an accused [State v. Duncan, supra; State v. Rudolph, 187 Mo. 67, 87-89, 85 S. W. 584, 589]. It follows that defendant had a public trial; and absent any showing of misconduct on the part of the members of the State Highway Patrol— legally constituted peace officers—their mere presence during the

progress of the trial and compliance with the instructions of the court and its officials in the maintenance of order and the retention of the accused in custody affords, under the facts disclosed in the instant case, no sufficient ground for a reversal of the judgment.

 XII. a. During the argument one of the State's attorneys, in disscussing appellant's acquisition of the Colt's .45 automatic pistol, stated the witnesses from Nebraska testified "This man came in and said, 'Back, back, and stick them up.'" He continued: "We have all got common sense—I haven't much, I think sometimes, but I know when a man goes into a bank and says 'Back, back, and stick them up'—I have an idea of what is going on; and that young lady told you that when they came out of the vault in which they were locked, and went to the drawer—." Appellant objected stating there was no such testimony. There was testimony that said automatic had been kept in a counter drawer immediately under the cashier's window of a bank at Gretna, Nebraska; that on August 14, 1930, it was in said drawer and appellant and a companion entered the bank and told the employees to stand back from the counter; and that the employees were locked in a vault, did not see appellant and his companion leave but after their departure the automatic was not to be found. With the exception of the statement: "Back, back, and stick them up," the argument was well within the testimony. From the testimony it was apparent appellant acquired the automatic during a robbery of the bank. If the statement "Back, back, and stick them up," was extravagant and outside the letter of the evidence, it, we think, was within the realm of legitimate inferences permissible from the testimony bearing on the subject-matter. [State v. Wright, 319 Mo. 46, 52(3), 4 S. W. (2d) 456, 458(10); State v. Rosegrant, 338 Mo. 1153, 93 S. W. 961, 973(22); State v. Dunn, 179 Mo. 95, 117(6), 77 S. W. 848, 855(6).] The matter was not the subject of extended discussion. It appears to have been introductory and incidental to a discussion of the identity of appellant, his opportunity to have possession of the weapon used in and his guilt of the homicide on trial; and is not cause for reversal.

 (b) The witness McNeiley made two confessions—in one he stated Eloy McKeever was his accomplice; in the other, that appellant committed the homicide. During his argument the prosecuting attorney of Boone County stated that appellant had been furnished with the confession in which McNeiley stated appellant committed the offense; that appellant did not offer it in evidence and that when the State offered it, it was excluded. He made no statement concerning the contents of said confession. Appellant objected to any reference to said confession. The objection was sustained. Appellant then asked the court to instruct the jury to disregard the statement. The

court immediately so instructed. No further request was made of the court; but appellant's motion for new trial assigns error in the court's "failing to rebuke said prosecuting attorney, when asked to do so by defendant's attorneys." Although the witness McNeiley testified in detail concerning the homicide and appellant's infliction of the mortal wound, the fact that the court excluded said confession when offered by the State sufficiently demonstrates that reference to the fact appellant did not offer said confession in evidence and that the court excluded it when offered by the State was not proper. [State v. Wigger, 196 Mo. 90, 100(4), 93 S. W. 390, 393(4).] · However, since the court sustained appellant's objection and complied with all requests made by appellant, appellant is not in position to complain. [State v. Loahmann (Mo.), 58 S. W. (2d) 309, 311(8); State v. Singleton (Mo.), 77 S. W. (2d) 80, 86(10); State v. Carryer (Mo.), 180 S. W. 850(3).] The insertion in the record by the court reporter of the stereotyped recital noting the saving of exceptions to adverse rulings is inadequate to supply the necessity of a specific request for a reprimand and serves no purpose, as there was no adverse ruling to which an exception by appellant would lie.

■■■ (c) From appellant's brief we first learn that certain remarks made by the prosecuting attorney were considered objectionable because, as construed by appellant, they referred to his failure to testify. The motion for new trial, insofar as supported by the record, merely alleges error on the part of the court in failing to rebuke the prosecuting attorney, and the objections interposed to the remarks were "we object to that as improper" and "we object to that." The remarks in question were to the effect that to all the mass of evidence adduced on behalf of the State, but two witnesses took the stand to deny anything; and, after objection interposed, that said witnesses "were Mr. Edwards and Mrs. Lucy Clark." Upon request to the court that the prosecuting attorney be required to withdraw the remarks, the prosecuting attorney stated he withdrew the statement. Appellant thereupon requested that the prosecuting attorney be reprimanded, and the court stated: "He will not make it any more." There was no request for a more pointed reprimand. The objection interposed, not stating the grounds upon which the remarks were objectionable, was insufficient [State v. Allison (Mo.), 300 S. W. 1069, 1071(8), and cases cited: State v. Hulbert (Mo.), 228 S. W. 499, 502(7); State v. White, 299 Mo. 599, 612(b), 253 S. W. 724, 728(11); State v. Napoli (Mo.), 44 S. W. (2d) 55, 56(3)]. For like reasons, the assignment in the motion for new trial was insufficient. It is legitimate argument for a prosecutor to present the strength of the State's case and the weakness of the defense, but improper to attempt to influence the jury by referring to the failure of an accused to testify [Sec. 3693, R. S. 1929, Mo. Stat. Ann., p. 3247.] This statutory prohibition is limited to its

express terms. [State v. Greer, 321 Mo. 589, 594(3), 12 S. W. (2d) 87, 90(6); State v. Larkin, 250 Mo. 218, 245, 157 S. W. 600, 607.] The remarks did not directly refer to appellant or his failure to testify. They referred to the testimony before the court and the witnesses who had testified. They were not limited in scope but directed to all the facts adduced in evidence by the State. Witnesses to refute the many facts established by the State's testimony, if untrue, should have been readily available to appellant. The strained construction sought to be given the remarks by appellant is not authorized by any reasonable interpretation of the plain meaning of the terms employed. [State v. De Priest, 288 Mo. 459, 468(3), 232 S. W. 83, 86(6) and cases cited; State v. Hughes, 258 Mo. 264, 271(3), 167 S. W. 529, 531(3); State v. Janes, 318 Mo. 525, 530, 1 S. W. (2d) 137, 139(3).] Furthermore, upon request, counsel withdrew the statement. In State v. Baker, 246 Mo. 357, 376(8), 152 S. W. 46, 52(9), this court said in discussing the issue: "No case has yet held that remarks of counsel in argument which were withdrawn by counsel constituted reversible error." If one is to be guided by the testimony, no serious doubt exists of appellant's guilt in the instant case. The point is ruled against appellant. [See annotations: 84 A. L. R. 784; 68 A. L. R. 1108.]

The foregoing disposes of all assignments in the motion for new trial presenting an issue for appellate review and briefed by appellant, and incidentally a number of assignments in said motion not briefed as well as other assignments insufficient to preserve an issue for review. The remaining assignments in said motion relate to instructions and the reception and exclusion of evidence. We have examined them and, while we are of opinion that all of said remaining assignments are insufficient to raise any issue for appellate review, find a number of said assignments are not supported by the record and others are without merit.

XIII. The motion for new trial stresses the exclusion of certain offered evidence, to-wit, certain documents of an official nature had in connection with proceedings against one Adam Richetti to answer for the same offense. The documents consisted of an affidavit for State warrant for the arrest of said Richetti by Wm. H. Sapp, prosecuting attorney; a transcript of the official entries on the justice's docket had under said affidavit; a petition to the Governor of Missouri for the requisition from the State of Ohio of said Richetti, signed by said Wm. H. Sapp; the official affidavit required to be made by the prosecuting attorney in connection with such petitions, signed by said Wm. H. Sapp in his official capacity as prosecuting attorney; and the affidavits of the presiding judge and the clerk of the county court authenticating said proceedings for requisition. Wm. H. Sapp was not a witness in the case. The documents referred to did not con-

stitute evidence of the facts therein set forth and could only serve for the purposes of impeachment. Their exclusion was proper.

 XIV. The assignments in the motion for new trial relating to instructions do not set forth in detail and with particularity the specific grounds or causes therefor [See Sec. 3735, supra]. An assignment alleging conflict in instructions does not specify any instructions deemed to be in conflict and does not point out wherein the conflict exists [See State v. Kaner, 338 Mo. 972, 93 S. W. (2d) 671, 674(8)]. Others merely state the court's action was "over the objections and exceptions of defendant" [See State v. Bagby, 338 Mo. 951, 93 S. W. (2d) 241, 247(4); State v. Rosegrant, 338 Mo. 1153, 93 S. W. (2d) 961, 967(7), 974(27)]. Under the authorities indicated, the assignments are insufficient to preserve any issue for appellate review.

The record proper stands unquestioned. We find no error therein. The only verdict justifiable under the oath of the jurors and the facts adduced is "guilty." The severe punishment assessed is within the limits permitted by law. The judgment is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by Bohling, C., is adopted as the opinion of the court. All the judges concur. Date of execution set for December 18, 1936.