**STATE of Missouri, Respondent,**

v.

**Floyd L. FELTROP, Appellant.**

No. 48186.

Supreme Court of Missouri,
Division No. 1.

Feb. 13, 1961.

Hugh M. Atwell, Eldon, for appellant.

John M. Dalton, Atty. Gen., James C. Bullard, Sp. Asst. Atty. Gen., for respondent.

HOLMAN, Commissioner.

Defendant, Floyd L. Feltrop, was charged with the murder (first degree) of Clifford William Cornett. The trial resulted in a verdict finding him guilty of manslaughter and his punishment was fixed at a fine of $500 and imprisonment in the county jail for a period of one year. Defendant has appealed from the ensuing judgment. Since no brief has been filed by defendant in this court we will consider the assignments properly made in his motion for new trial.

■ Defendant has questioned the sufficiency of the evidence to support the verdict. A brief statement of the facts will demonstrate that there is no merit in that contention.

There was evidence indicating that there had been bad feeling between defendant and Cornett for some time prior to the date of the homicide. Each had made threats against the other. At about 10 p. m. on June 18, 1959, defendant shot Cornett twice with a .45 caliber Colt automatic and as a result thereof decedent died a few minutes thereafter. After those shots were fired Mrs. Cornett attempted to take the gun from defendant and in the ensuing struggle a third shot was fired which seriously wounded the defendant.

The homicide occurred in Resa's Tavern in Eldon, Missouri. Decedent and defendant had spent most of the evening at the tavern. When defendant entered the tavern he had the gun in question concealed in his shirt. He testified that he had the gun for "protection" and that he took it out of his shirt and put it between two beer cases located behind the bar near the north end thereof. Dorothy Burlingame testified that she talked with defendant during the early part of the evening and that he showed her the gun and told her that he was going to kill Cornett.

None of the witnesses for the State saw what occurred immediately before the shooting. Most of them heard the first shot and looked up in time to see defendant fire the second shot at deceased. Defendant, in support of his defense of self-defense, testified that he saw Cornett coming toward him with something "silver colored" in his hand; "I couldn't say what it resembled. * * * It could have been a gun or a knife or a shuffle board weight"; that he reached around the end of the bar to get the gun and it was placed in his hand by Bonnie (a waitress); that about the time he got the gun he was hit behind the ear and "stunned." "I can't remember positive what happened after that. * * * There were several shots fired, I guess, right there within the matter of a few seconds; * * * I think I used that gun; I think I did some shooting with it."

Defendant complains of error in the admission of evidence offered by the State as follows: "(a) The court permitted the sheriff to testify as to statements made by other parties and not in the presence of the defendant. (b) The court admitted evidence by the sheriff that was alleged to have been obtained by investigation of other parties. (c) The court admitted evidence as to weapons and bullets found in the premises by other parties after the premises had been opened to the public and various persons had been in and out of the premises some 30 minutes after the shooting had taken place." With reference to (a) and (b) it will be noted that defendant has not specified the particular evidence about which he complains. We have read the testimony of the sheriff and do not find any evidence which was admitted over defendant's objection which corresponds to the general description in those assignments. We therefore have nothing before us to consider in regard to those points.

■ Assignment (c), supra, refers to State's exhibits 1 to 6, inclusive, which were items obtained by the sheriff at the tavern shortly after the shooting. All of these exhibits were admitted without objection except exhibit 1, the gun alleged to have been used by defendant. Exhibit 1 was offered during the State's case in chief and then withdrawn when defendant objected that it had not been properly iden-

tified. It was thereafter re-offered and admitted during rebuttal over the defendant's objection that "it should have been offered in the direct testimony." It is well settled that the trial court has a broad discretion as to the order of proof and in permitting evidence to be admitted in rebuttal which should have been offered during the case in chief. State v. Washington, Mo.Sup., 320 S.W.2d 565; State v. Robinson, Mo.Sup., 325 S.W.2d 465. We find nothing in the record to indicate any abuse of the trial court's discretion in this instance. The contention is overruled.

The next contention in the motion is as follows: "The court erred in rejecting the following competent, relevant and material evidence offered by the defendant: (a) Testimony offered by defendant as to the assault made by the wife of the deceased. (b) The court refused testimony as to the weapon used by the deceased which weapon was admitted to be in possession of state witness Wilson or the prosecuting attorney, which weapon was found at the scene of the crime. (c) The court refused testimony as to the character and reputation of the wife of deceased after it was shown that she was an accessory and aided in assaulting and attempting to take the life of defendant."

In reference to (a), supra, we have searched the record and have been unable to find any instance where the court excluded evidence offered by defendant relating to an assault made by the wife of deceased. The point therefore cannot be sustained.

■ Subpoint (b) apparently refers to certain testimony defendant attempted to elicit upon cross-examination from Harold Wilson, the police chief of Eldon. Mr. Wilson testified that a few days after the homicide he arrested George Wickham for being "drunk and disorderly" and upon searching Wickham took a pocket knife from him. While defendant made no offer of proof it appears that he desired to prove by the witness that Mrs. Wickham had told him that she had found the knife at the

tavern the night of the homicide. The prosecuting attorney objected to the questions upon the ground of hearsay and the court properly sustained the objections. The point is without merit.

■ The contention stated in subpoint (c) apparently relates to a ruling in connection with defendant's cross-examination of Sheriff Abbott. Counsel for defendant asked the sheriff whether he had questioned decedent's wife on the night of the homicide and received an affirmative answer. Then the following question was propounded: "Q. And did you know that she was an ex-convict?" The trial court sustained an objection to the question and that ruling is apparently the basis of the instant complaint. While it would seem apparent that the ruling of the trial court was proper we need not (and do not) actually decide that point as defendant did not make any offer of proof. Where the relevancy or admissibility of evidence is not apparent it is not error to exclude the same unless the party seeking its admission states to the trial court the nature of the testimony he expects to elicit and the purpose for which it is offered so that the court may determine its relevancy and admissibility. State v. Hamilton, Mo.Sup., 310 S.W.2d 906. The contention under consideration is accordingly overruled.

■ The next assignment relates to the alleged errors of the court in overruling defendant's objections to alleged improper and prejudicial argument on the part of the prosecuting attorney in two instances. The first portion of the argument complained of is the following: "Miller County is looking at you. This is a good county, Eldon is a good town, but unless we clamp down on these violations, serious violations like this, you are giving a written ticket to the other people to go ahead and take anybody's life and all you have to do is to say 'Well, he did so and so.' Mr. Atwell: I object to that. Mr. Snodgrass: You take this man's testimony today—Mr. Atwell: I object to that line of argument, what might happen to a town

or any other place. This jury is deciding this case on its own. Mr. Snodgrass: * * * I am telling this jury to enforce the laws of this State, that's all I am trying to tell them. The Court: Objection overruled." We have concluded that the trial court did not abuse its discretion in overruling the defendant's objection. In the last statement heretofore quoted Mr. Snodgrass made it plain that he was urging the jury to enforce the laws of this state. A prosecuting attorney "has the right to urge a jury to do its duty and to protect society by enforcement of the law. 23 C.J.S. Criminal Law § 1107, p. 583; State v. Carter, 345 Mo. 74, 131 S.W.2d 546, loc. cit. 548(5, 6); State v. Martin, Mo., 56 S.W.2d 137, loc. cit. 141(15–17); State v. Greer, 321 Mo. 589, 12 S.W.2d 87, loc. cit. 91(7, 8)." State v. Fletcher, Mo.Sup., 244 S.W.2d 98, 104.

 The second statement which defendant contends was prejudicial is the following: "Mr. Snodgrass: * * * If you believe that girl told you the truth this man is guilty of first degree murder * * *. Mr. Atwell: Now, I object to that statement that the defendant is guilty of first degree murder. I don't think the prosecuting attorney has the right to pass on that matter, it is up to the jury. The Court: Overruled." It is clear that the prosecuting attorney was not expressing any personal opinion as to the guilt of defendant. His reference to "that girl" obviously referred to Dorothy Burlingame who testified that defendant had told her early in the evening in question that he was going to kill decedent. The conclusion that defendant was guilty of first degree murder was conditioned upon a finding *by the jury* that Dorothy had given truthful testimony. "A prosecutor is entitled to argue to the jury that in his opinion the defendant is guilty where he states or it is apparent that such opinion is based on the evidence." State v. Lunsford, Mo.Sup., 331 S.W.2d 538, 541. The court properly overruled defendant's objection to the statement in question.

 The final assignment is that the court erred in failing to grant a new trial because of the separation of the jury during the progress of the trial. The evidence adduced upon the hearing of the motion for new trial showed that the jury was in the custody of two deputy sheriffs. When court recessed at the end of the first day of the trial each deputy took six of the jurors in his car and drove to a cafe several miles away where the fourteen men ate the evening meal together. Thereafter they were transported in the same manner as heretofore described to a motel where they spent the night in two "double cabins." Six jurors and a deputy stayed in each cabin. The next morning each deputy took six jurors in his car and returned to the cafe where the fourteen men had breakfast together and they were then returned to the courtroom. Each deputy testified that no one had an opportunity to talk with any juror and that the jurors were not separated from each other except in the two groups of six for the purpose of being transported and sleeping. There was also testimony that Tuscumbia (where the trial was held) had a population of only 200 people and that it had no hotel or motel accommodations and that the motel where the jury slept was the closest available.

We have decided that there was no showing that the jury "separated" within the meaning of Section 546.230 RSMo 1959, V.A.M.S. It has long been the rule in this state that "the mere physical separation of the jury for sleeping purposes in case of necessity or for their better accommodation does not violate a statute forbidding a separation provided they remain in the custody and under the surveillance (not necessarily ocular) of the officer in charge of them." State v. Shawley, 334 Mo. 352, 67 S.W.2d 74, 89. See also State v. Arnett, 338 Mo. 907, 92 S.W.2d 897. In the case of State v. Ferguson, Mo.Sup., 133 S.W. 2d 1023, 1025, 1026, we pointed out that in many of the small cities of our state it is not always reasonably possible to ob-

tain sleeping quarters and other facilities which afford a literal compliance with the statute prohibiting separation of the jury. "A sensible and substantial compliance with the statutory mandate must be considered sufficient." The statute "must be interpreted reasonably, with consideration of the necessities of the situation and, of course, always with consideration of the substantial rights of the defendant." The Shawley, Arnett and Ferguson cases relate primarily to the physical separation of the jury for sleeping purposes. In the case at bar there was a physical separation for sleeping purposes and also for the purpose of being transported to the cafe and motel. We think the reasoning followed in those cases would apply with equal force to both situations.

It should be noted that the instant contention does not involve an alleged separation after submission of the case to the jury for decision. Also, as we have stated, it was not shown that the jurors had an opportunity to communicate with any other person. Moreover, there is no evidence indicating any suggestion of misconduct and, in fact, the evidence affirmatively shows its absence. We are convinced that the defendant's rights have not been prejudiced and that, under the circumstances here shown, there has been no violation of the rule prohibiting separation of the jury. It follows that the trial court did not err in failing to grant a new trial because of the alleged separation of the jury.

An examination of that part of the record relating to matters not required to be preserved in the motion for new trial discloses no error. We have concluded that defendant was afforded a fair trial and that the judgment should be affirmed. It is so ordered.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.