STATE of Missouri, Respondent,

v.

Mack BARNHOLTZ, Appellant.

No. 45031.

Supreme Court of Missouri.

Division No. 2.

Feb. 13, 1956.

Motion for Rehearing or to Transfer
to Court en Banc Denied.
March 12, 1956.

Charles M. Shaw and Wayne C. Smith,
Jr., Clayton, for appellant.

John M. Dalton, Atty. Gen., John W.
Inglish, Asst. Atty. Gen., for respondent.

STORCKMAN, Judge.

The defendant was convicted of attempt-
ed bribery and, in accordance with the ver-
dict, was sentenced to imprisonment in the
county jail for ten days and ordered to pay
a fine of $1,000, from which judgment he
has appealed.

Mack Barnholtz, the defendant, operated
a tavern and restaurant known as Lindy's
in an unincorporated area of St. Louis
County. On August 21, 1954, at about 2:05
a.m., Melvin Cottom and Gilbert Henry

Scheu, deputy sheriffs in St. Louis County, went into defendant's place of business. They were in uniform and wearing their badges of office. They saw two bottles of whiskey and a bottle of gin on the top of the bar. The defendant, behind the bar, was in the attitude of pouring a drink from one of the bottles. Since the defendant had a license for the sale of 3.2 beer only, the liquor was seized and the defendant was arrested and charged with illegal possession of intoxicating liquor. The indictment charges that the defendant, while under arrest, offered Deputy Sheriff Cottom "a sum of money to secure his release from such aforesaid officer."

The defendant contends that the court erred in failing to direct a verdict of acquittal at the conclusion of all the evidence "for the reason that the proof amounts to a fatal variance from the facts alleged in the indictment, and thus does not sustain the indictment." Defendant more specifically contends that there was a total failure of proof of the charge that "the defendant, after he had been lawfully arrested did offer to deputy sheriff Cottom money or a sum of money as a bribe." We will consider this assignment of error, despite probable merit in respondent's contention that it was not properly saved for review because a motion for a directed verdict of acquittal was not filed at the close of the whole case and because the question of variance was not raised prior to the filing of the motion for new trial. State v. Grove, Mo.Sup., 204 S.W.2d 757, 759 [2]; Supreme Court Rule 26.04, 42 V.A.M.S.

With respect to this phase of the case, Cottom testified that when he and Scheu entered defendant's tavern the defendant immediately came from behind the bar and "met us about half way." Barnholtz told the officers that he would like to talk to Cottom for a minute and went into the kitchen with Cottom following. A cook and a waitress were there and the defendant asked them to step out, which they did. Cottom testified that then: "Mr. Barnholtz reached in his pocket and brought out an unknown amount of bills and he says, 'Why can't we fix you up with a present and

take care of this here and now; we don't have to go to Clayton'. I said, 'Mr. Barnholtz, you are under arrest; we are going to Clayton'." The money the defendant had in his hand appeared to be United States currency. When Cottom announced that the defendant was under arrest they left the kitchen and went back into the tavern where Deputy Sheriff Scheu was collecting the bottles of liquor. After the arrest the defendant was driven to Clayton by the deputy sheriffs in their automobile and Cottom testified: "He [the defendant] *continued* to try to offer us a present. He didn't say any amount, he said, 'Why couldn't I give you a present, we could forget about this and we wouldn't have to go through all this trouble.' In fact, he did that on three different occasions on the way to Clayton."

On cross-examination witness Cottom testified that "He [the defendant] had money in his hand," "he definitely had it out of his pocket" and "was holding it in the palm of his hand." The defendant at one time made the offer in these words, "Why can't we get this fixed here and now?" Under further cross-examination this question was asked of Cottom and this reply was given: "Q. This offer of a bribe you say the only time the money was shown to you was before you placed this man under arrest? A. Well, at the time I was placing him under arrest. It was all at the same time." Further Cottom testified that the defendant showed him the money and asked the deputy sheriff "How much money will it take to let me go?"

Deputy Sheriff Gilbert Henry Scheu testified that when the defendant and Cottom came out of the kitchen and rejoined him in the tavern the defendant said, "We could settle this right here and now" and that on the way to the station the defendant offered three times to make them a present and his words, in substance, were: "Why couldn't we forget about this; I would like to make you a little present."

The defendant, on the stand, conceded that while he was in the kitchen with Officer Cottom "I put my hand in my pocket

and pulled out my money and showed him." His version of the transaction, however, was that Cottom had asked for $50 and the defendant was showing him that he did not have that much money. Defendant testified that he told Cottom that he was going to report the matter to some people he knew in Clayton to see if he had to pay any money, and that the deputy sheriff then arrested him.

■ All the evidence indicates that "a sum of money," as charged in the indictment, was exhibited to Cottom by the defendant. The jury was justified in finding that it was an offer and attempt to bribe the deputy sheriff, as attested by him. The defendant further contends, however, that a variance exists in that there was no showing that an offer was made while defendant was under arrest. With this we cannot agree. Officer Cottom testified that the money was exhibited and offered to him by defendant "at the time I was placing him under arrest. It was all at the same time." Furthermore, the state's evidence shows that there was a continuing attempt to bribe after the formal arrest had been made in that the defendant, on three different occasions on the way to Clayton, offered to give Officers Cottom and Scheu "a present." From this the jury could very well infer that there was a continuing offer of the money which defendant had exhibited in the kitchen. The proof supports the charges of the indictment.

The two cases cited by defendant in support of this allegation of error have no application to the facts of this case. The case of State v. Stewart, 228 Mo.App. 187, 63 S.W.2d 210, involved a charge that the defendants were playing a game of chance commonly called "rumme" with cards for money. There was no evidence in the case whether there was a game called "rumme," what it was or how it was played. This was held to be not a mere variance but a total failure of proof. In the case of State v. Temple, Mo.App., 262 S.W.2d 304, the information charged the defendant with permitting a gambling device on premises possessed and controlled by him. The premises were described by metes and bounds in the information. The evidence tended to show that certain truck drivers were shooting craps on a concrete slab near some business buildings but there was no evidence showing that the location was within the premises specifically described in the information. This was held to be a failure of proof that constituted prejudicial error.

■ Defendant next contends that error was committed in admitting into evidence state's exhibits "A," "B" and "C," being the two bottles of whiskey and one of gin alleged to have been taken from defendant's premises. The defendant alleges that there was a failure to show that these exhibits were the same bottles that were taken from defendant's place of business.

We must keep in mind that the charge here is an offer or attempt to bribe so that the bottles of liquor and the character of their contents are material only on the question of whether defendant was lawfully arrested and not whether he was guilty of the charge for which he was arrested. The state's evidence did tend to show that these were the same bottles, or bottles sufficiently similar to serve the purpose of showing that the officers had reasonable grounds for making the arrest. In fact, it appears that a lawful ground for arrest could have been shown without introducing or attempting to introduce in evidence the three bottles of liquor.

Deputy Scheu testified on direct examination without objection that, "I saw three bottles of whiskey sitting on the bar." He stayed and watched the liquor while Cottom went into the kitchen with the defendant. He went back and picked up the liquor. Witness Scheu testified that the state's exhibits "A," "B" and "C" looked like "the three bottles that were sitting on his bar." The witness recognized the tag that Officer Cottom had put on state's exhibit "B." The prosecuting attorney announced that it was not his purpose to pass the exhibits to the jury. On cross-examination the witness Scheu, in reply to questions

by defendant's counsel, testified without objection who had had custody and control of the bottles from the time that they had been taken from defendant's tavern.

The defendant admitted whiskey was on his premises the night of the arrest. As a witness in his own behalf the defendant testified: "Q. Now, these things that have been marked as State's Exhibits A, B and C, these are whiskey bottles, aren't they— you don't have to be an expert to know that? A. Yes, sir. Q. Have you ever seen these particular bottles before? A. Well, I wouldn't remember whether they were the same bottles or not." He testified that there were bottles of whiskey in his tavern when the two deputy sheriffs arrived. He believed there were three but he was not sure whether these were the same three bottles. His explanation was that the whiskey had been brought in by some friends who came out to get some steaks about 2 a. m. His friends gave him the bottles and he "put them behind the bar." On cross-examination he testified: "Q. You did. You did have three bottles of hard liquor on the premises that night, didn't you? A. Wait a minute. They were on the premises; I didn't have them on there. Q. You took them from your friends and put them behind the bar, didn't you? A. That's right."

The important thing is that the deputy sheriffs had reasonable cause to believe that liquor was openly possessed by the defendant in premises licensed to sell nonintoxicating beverages only. By looking at the bottles the jury could determine whether there would be reasonable cause to believe that the bottles contained intoxicating liquor. In this type of case it is not necessary that these be the identical bottles. In Dolan v. United States, 8 Cir., 218 F.2d 454, the defendant was convicted of perjury. It was contended on appeal that two metal suitcases were improperly admitted in evidence because there was no proof that these were the identical suitcases which were brought into the police headquarters on the night in question. In ruling the contention adversely to the appellant, the United States Court of Appeals stated, 218 F.2d loc. cit.

459: "Dolan himself, while under cross-examination, testified that he could not positively identify the two metal suitcases as being the ones that Hall had, since he (Dolan) put no mark of identification on them, but that they looked similar to the suitcases he saw the money in when they were opened at the police station the night of October 6, 1953. Whether the metal suitcases admitted in evidence were conclusively proven to be the suitcases which Dolan and Shoulders took from Hall is unimportant. They were, in any event, admissible as being like those suitcases. They were important mainly for the purpose of enabling the jury to judge whether such suitcases would or would not have been readily observable by those who testified that they saw nothing of the sort in the hands of Dolan or Shoulders at the time Hall was brought into the station and during the time he was being booked and placed in the 'holdover' or shortly thereafter."

Even if exhibits "A," "B" and "C" were not fully and properly identified, the error would not be prejudicial since the bottles, if not the same, were similar and the defendant admitted that there was whiskey on his premises in similar containers.

■ The defendant next complains that error was committed in admitting in evidence state's exhibit "E," for the reason that said exhibit was not proper rebuttal evidence. This exhibit is the record in the office of the Circuit Court for Criminal Causes of the City of St. Louis showing that Mack Barnholtz, on June 4, 1951, pleaded guilty to the crime of abortion and was "sentenced, ordered and adjudged by the court" to pay a fine of $250 to the State of Missouri.

On cross-examination the defendant at first denied that he had been convicted of a crime. On further interrogation he testified very uncertainly. At one point he admitted that he had been fined $200 but did not remember the charge. Again he said he remembered the case and it "was to assist in an abortion" but he did not remember if he had been fined $200. Then again

he said, "I don't remember the case." And again, "I remember the case, but I don't remember what happened with it." Later under re-examination by his attorney he testified he had no convictions and, "I believe you are not allowed to have any convictions whatsoever in order to get a liquor license." His last testimony on the subject was that he could not remember being fined $200 and there were questions by his attorney tending to elicit answers that the defendant had never been convicted.

Under the circumstances it was entirely proper for the state, on rebuttal, to prove by the records that the defendant had, in fact, been convicted. Section 491.050 RSMo 1949, V.A.M.S. Defendant cites the case of Myles v. St. Louis Public Service Co., Mo.App., 52 S.W.2d 595, in support of the rule that where the witness admits the conviction, the record of the conviction becomes inadmissible. In the case at bar, however, the defendant's indefinite admission was so impaired, if not entirely destroyed, by his later testimony that the introduction in evidence of the record of conviction was fully justified. In fact, there is no proper objection to the use of the record, the objection at the time being that, "I object unless it is further shown that the person named in there is this person." Apart from the presumption arising from identity of names, there was sufficient identification of defendant as the person involved in the record of conviction.

■ Defendant's final complaint is that, "the Court by its general attitude in the trial of this cause towards both the case and defendant's counsel created an atmosphere in which the defendant could not have a fair trial to the prejudice of defendant."

Defendant refers to approximately half a dozen episodes which he terms exhibitions of "impatience" by the court and concludes that "an indication of impatience with counsel for defendant is an expression by the Court of a belief in the defendant's guilt." We cannot agree with this conclusion and allegations of error of this sort do not prove themselves. State v. McKeever, 339 Mo. 1066, 101 S.W.2d 22, 30 [19].

In an exchange between the court and defendant's counsel out of the hearing of the jury, defendant's counsel objected to the "tone of voice of the court." Until the time arrives that transcripts are brought to us on sound recordings there is little we can do about objections to tonal qualities. Moreover, such a device would enable us to determine who set the pitch for the resulting disharmony.

[5] One of the more serious of the alleged acts of impatience occurring in the jury's presence is where the court told defendant's counsel, "the proper place for you when he [the prosecuting attorney] is interrogating the witness is in the chair and not walking around." We find nothing improper in this admonition. In State v. Montgomery, Mo.Sup., 223 S.W.2d 463, 469, it was held that the threat of the trial judge to fine defendant's counsel for contempt as well as telling him to keep his seat did not constitute error. There is no necessity for an extended discussion of the other instances about which complaint is made. We have carefully examined all of them and cannot say from the record before us that the court acted otherwise than in the proper exercise of its discretion. State v. McKeever, supra.

The character and number of the matters presented for review indicate that defendant was not prejudiced in the trial and submission of his cause. Only two evidence points were raised and we have concluded that the court ruled correctly in each instance. No claim of error was made with respect to the arguments or instructions to the jury. The record does not disclose any display of hostility on the part of the court toward the defendant or his case. We are convinced that the trial judge acted at all times with a purpose of maintaining orderly procedure and "a desire to expeditiously hear the case without denying the defendant any right to which he was entitled under the law." State v. Fletcher, Mo.Sup., 190 S.W. 317, 323. The facts in

this case are not comparable to those in State v. Jones, Mo.Sup., 197 S.W. 156 and the other cases cited by defendant.

No error appearing, the judgment is affirmed.

All concur.